Case No. 25-1161

In The

# United States Court of Appeals for the Tenth Circuit

––––––––––––––––

ESTATE OF WILFORD DEWEESE, Plaintiff–Appellant,

v.

RONNIE HANCOCK, DANIEL LEBARON, LEVI HOOVER, and
JEFFREY SCHUELKE, Defendants–Appellees.

––––––––––––––––

On Appeal from the
United States District Court for the District of Colorado
The Honorable Daniel D. Domenico
Civil Action No. 24-cv-00960-DDD-NRN

## APPELLEES' JOINT ANSWER BRIEF

Bryan E. Schmid
Steven W. Martyn
El Paso County Attorney's Office
200 South Cascade Avenue, Suite 150
Colorado Springs, CO 80903
Telephone: (719) 520-6485
Email: bryanschmid@elpasoco.com
Email: stevenmartyn@elpasoco.com
*Attorneys for Appellees Hancock and LeBaron*

Eric M. Ziporin
Jonathan N. Eddy
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO 80210
Telephone: (303) 320-0509
E-Mail: eziporin@sgrllc.com
E-Mail: jeddy@sgrllc.com
*Attorneys for Appellees Hoover and Schuelke*

**ORAL ARGUMENT IS REQUESTED**

October 2, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

STATEMENT OF RELATED CASES/APPEALS .................................................. 1

STATEMENT OF THE ISSUES PRESENTED ON APPEAL ............................. 1

STATEMENT OF THE CASE .............................................................................. 2

   I.   COURSE OF PROCEEDINGS .................................................................... 2

   II.   THE ESTATE'S ALLEGATIONS. ............................................................. 2

   III.   ORDER OF DISMISSAL. ......................................................................... 4

SUMMARY OF THE ARGUMENT ..................................................................... 5

ARGUMENT ........................................................................................................ 5

   I.   STANDARD OF REVIEW AND RELEVANT LEGAL STANDARDS. ... 5

     A.   Rule 12(b)(6) standard. ........................................................................ 5

     B.   Qualified immunity standard. ............................................................... 6

     C.   Objective reasonableness standard. ...................................................... 7

   II.   THE DISTRICT COURT DID NOT ERR WHEN IT APPLIED REASONABLE FACTUAL INFERENCES TO ITS QUALIFIED IMMUNITY ANALYSIS. ......................................................................... 8

   III.   THE DISTRICT COURT DID NOT ERR IN DISMISSING THE ESTATE'S EXCESSIVE INTERMEDIATE FORCE CLAIMS ................................... 13

     A.   Deputy Hancock's intermediate force was not excessive: His decision to deploy Jinx was objectively reasonable, not reckless ............................... 14

i

1. *The severity of Deweese's suspected pre-deployment crimes warranted Jinx's deployment.*.............................................14

2. *Deweese posed a sufficient threat to warrant Jinx's deployment.*.......18

3. *Deweese actively resisted arrest prior to Jinx's deployment.*.............20

B. The failure-to-intervene and conspiracy claims necessarily fail..............23

C. No clearly established law prohibited Jinx's deployment under the alleged circumstances. ..............................................................24

1. *Legal background.* ...........................................................24

2. *Application.* ...................................................................26

IV. THE DISTRICT COURT DID NOT ERR IN DISMISSING THE ESTATE'S EXCESSIVE DEADLY FORCE CLAIMS.............................29

A. Defendants' use of deadly force was objectively reasonable. .................31

1. *The severity of Deweese's underlying crimes favor Defendants.*.......32

2. *Deweese posed a sufficient threat to warrant deadly force*...............32

3. *Deweese continued to resist and evaded arrest.*..............................37

B. No clearly established law prohibited deadly force under the alleged circumstances. .......................................................................38

1. *Legal background.* ...........................................................38

2. *Application.* ...................................................................38

CONCLUSION ...............................................................................43

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alcala v. Ortega*, 128 F.4th 1298 (10th Cir. 2025) ....................................34, 36, 37

*Aldaba v. Pickens*, 777 F.3d 1148 (10th Cir. 2015) ..........................................22, 24

*Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997) ....................................11, 13, 41

*Andersen v. DelCore*, 79 F.4th 1153 (10th Cir. 2023) ....................................20, 22

*Anderson v. Creighton*, 483 U.S. 635 (1987) ..........................................................24

*Arnold v. City of Olathe*, 35 F.4th 778 (10th Cir. 2022) ........................................25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 6

*Baca v.Cosper,* 128 F.4th 1319 (10th Cir. 2025) ..................................................39

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 6

*Berryman v. Niceta*, 143 F.4th 1134 (10th Cir. 2025) ........................................... 5

*Bond v. City of Tahlequah,* 981 F.3d 808 (10th Cir. 2020) ....................................42

*Bridges v. Yeager*, 352 F. App'x 255 (10th Cir. 2009) ..........................................21

*Brown v. City of Tulsa*, 124 F.4th 1251 (10th Cir. 2025) ........................................ 9

*Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008). ............................26

*Campbell v. City of Springboro,*700 F.3d 779 (6th Cir. 2012) ..............................28

*Camreta v. Greene*, 563 U.S. 692 (2011) .............................................................13

*Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007) .................24, 26

*Cavanaugh v. Woods Cross City*, 625 F.3d 661 (10th Cir. 2010) .........................26

*Chew v. Gates,* 27 F.3d 1432 (9th Cir. 1994) ........................................28

*City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9 (2021)....................................38

*Clerkley v. Holcomb,* 121 F.4th 1359 (10th Cir. 2024)..........................................40

*Cook v. City of Albuquerque,* 639 F. Supp. 3d 1185 (D.N.M. 2022) ....................27

*Cooper v. Brown,* 844 F.3d 517 (5th Cir. 2016) .....................................................28

*Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009)..............................................18

*Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007)..............................................21

*Cruz v. City of Deming*, 138 F.4th 1257 (10th Cir. 2025)................................34, 36

*D.C. v. Wesby*, 583 U.S. 48 (2018).........................................................................25

*Emmett v. Armstrong*, 973 F.3d 1127 (10th Cir. 2020)....................................18, 21

*Erickson v. City of Lakewood,* 489 F. Supp. 3d 1183 (D. Colo. 2020)..................27

*Est. of B.I.C. v. Gillen*, 761 F.3d 1099 (10th Cir. 2014) ........................................27

*Est. of Ceballos v. Husk*, 919 F.3d 1204 (10th Cir. 2019) ...............................35, 41

*Est. of George v. City of Rifle, Colorado*, 85 F.4th 1300
    (10th Cir. 2023)..................................................................................20, 32, 36

*Est. of Harmon v. Salt Lake City,* 134 F.4th 1119 (10th Cir. 2025) ......................39

*Est. of Ronquillo by & through Est. of Sanchez v. City & Cty. of Denver*,
    720 F. App'x 434 (10th Cir. 2017)..................................................................18

*Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161 (10th Cir. 2020)......31, 33

*Est. of Valverde by & through Padilla v. Dodge*, 967 F.3d 1049,
    (10th Cir. 2020)......................................................................................7, 35, 40

*Estate of Ceballos v. Husk*, 919 F.3d 1204 (10th Cir. 2019)...................................13

*Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255
    (10th Cir. 2008)................................................................. 31, 32, 34, 35, 37, 40

*Est. of Taylor v. Salt Lake City*, 16 F.4th 744 (10th Cir. 2021)...... 15, 16, 35, 36, 37

*Finch v. Rapp,* 38 F.4th 1234 (10th Cir. 2022)........................................................38

*Flores v. Henderson*, 101 F.4th 1185 (10th Cir. 2024)..............................16, 29, 30

*Graham v. Connor*, 490 U.S. 386 (1989) .............7, 8, 10, 18, 20, 23, 31, 32, 37, 41

*Griffith v. El Paso Cnty., Colorado*, 129 F.4th 790 (10th Cir. 2025) ..................... 9

*Gumble v. Waterford Twp.*, 171 F. App'x 502 (6th Cir. 2006) .............................17

*Gutierrez v. Hackett* 131 F. App'x 621 (10th Cir. 2005) .......................................19

*Helvie v. Jenkins*, 66 F.4th 1227 (10th Cir. 2023) ...........................................20, 22

*Hernandez v. Mesa*, 582 U.S. 548 (2017)..............................................................15

*Herold v. Christensen*, 2025 WL 2237557 (10th Cir. Aug. 6, 2025) ....................27

*Herrera v. Bernalillo Cnty. Bd. of Cnty. Comm'rs*, 361 F. App'x 924
    (10th Cir. 2010)................................................................................................21

*Herring v. Keenan*, 218 F.3d 1171 (10th Cir. 2000)..............................................14

*Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204
    (10th Cir. 2020)................................................................................................23

*Hodge v. Bartram*, 2023 WL 1462746 (10th Cir. Feb. 2, 2023) ...........................41

*Holland ex rel. Overdorff v. Harrington,* 269 F.3d 1179 (10th Cir. 2001)...........6, 7

*Ibarra v. Lee*, 135 F.4th 1257 (10th Cir. 2025) ...............................................21, 38

*Johnson v. City of Roswell*, 752 F. App'x 646 (10th Cir. 2018) .....................33, 34

*Jordan v. Jenkins*, 73 F.4th 1162 (10th Cir. 2023) ................................................21

*Katterman v. Salt Lake Cnty,* 2017 WL 1207518 (D. Utah Mar. 31, 2017) ..........28

*Landon v. City of N. Port,* 745 F. App'x 130 (11th Cir. 2018) ............................29

*Lee v. Tucker*, 904 F.3d 1145 (10th Cir. 2018) ......................................................18

*Lennen v. City of Casper, Wyoming*, No. 21-8040, 2022 WL 612799
    (10th Cir. Mar. 2, 2022*)* .............................................................................36, 37

*Lewis v. City of Edmond*, 48 F.4th 1193 (10th Cir. 2022).....................................25

*Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127 (10th Cir. 2023)............... 9

*Luethje v. Kyle*, 131 F.4th 1179 (10th Cir. 2025) .............................................26, 41

*McCoy v. Meyers*, 887 F.3d 1034 (10th Cir. 2018).................................................26

*Mecham v. Frazier*, 500 F.3d 1200 (10th Cir. 2007) .............................................22

*Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012) ...............................................15, 26

*Moya v. City of Clovis*, 829 F. App'x 346 (10th Cir. 2020)...................................20

*Mullenix v. Luna*, 577 U.S. 7 (2015) .................................................................6, 25

*Mullins v. City of Boulder,* 575 F. Supp. 3d 1360 (D. Colo. 2021) .......................27

*Mundt v. Gadziala,* No. 24-1041, 2024 WL 5087212 (10th Cir. 2024) ..............8, 9

*Myers v. Brewer,* 773 F. App'x 1032 (10th Cir. 2019) ..........................................21

*Nosewicz v. Janosko*, 754 F. App'x 725 (10th Cir. 2018)......................................22

*Palacios v. Fortuna*, 61 F.4th 1248, 1256
    (10th Cir. 2023).....................................................19, 30, 31, 33, 34, 35, 36, 40

*Pauly v. White,* 874 F.3d 1197 (10th Cir. 2017) .............................................39, 42

*Pearson v. Callahan,* 555 U.S. 223 (2009).........................................................6, 13

*Perea v. Baca*, 817 F.3d 1198 (10th Cir. 2016) ....................................................... 7

*Phillips v. James*, 422 F.3d 1075 (10th Cir. 2005) ................................................ 7

*Priester v. City of Riviera Beach,* 208 F.3d 919 (11th Cir. 2000) .........................28

*Puller v. Baca,* 781 F.3d 1190 (10th Cir. 2015)...................................................... 6

*Quinn v. Young*, 780 F.3d 998 (10th Cir. 2015).....................................................25

*Reavis Est. of Coale v. Frost*, 967 F.3d 978 (10th Cir. 2020) ..........................30, 39

*Richison v. Ernest Grp., Inc.*, 634 F.3d 1123 (10th Cir. 2011) .............................31

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) ......................................... 6

*Rosales v. Bradshaw,* 72 F.4th 1145 (10th Cir. 2023) ...........................................39

*Rowell v. Bd. of Cty. Commissioners of Muskogee Cty., Oklahoma*,
    978 F.3d 1165 (10th Cir. 2020).......................................................................23

*Sanchez v. Guzman*, 105 F.4th 1285 (10th Cir. 2024) ...........................................40

*Sanchez v. Labate*, 564 F. App'x 371 (10th Cir. 2014).........................................17

*Sawyers v. Norton*, 962 F.3d 1270 (10th Cir. 2020) .............................................24

*Scott v. Harris*, 550 U.S. 372 (2007) ....................................................................18

*Shepherd v. Robbins,* 55 F.4th 810 (10th Cir. 2022).............................................. 6

*Shively v. Utah Valley Univ.*, No. 20-4088, 2022 WL 1021614
    (10th Cir. Apr. 6, 2022)...................................................................................31

*St. George v. City of Lakewood, Colorado,* 2021 WL 3700918,
(10th Cir. Aug. 20, 2021) ............................................................34, 40

*Surat v. Klamser*, 52 F.4th 1261 (10th Cir. 2022).................................................24

*T.D. v. Patton*, 868 F.3d 1209 (10th Cir. 2017) ....................................................13

*Tenorio v. Pitzer*, 802 F.3d 1160 (10th Cir. 2015)..........................................32, 39

*Thomas v. Durastanti*, 607 F.3d 655 (10th Cir. 2010) ....................................10, 31

*Thomson v. Salt Lake Cnty.*, 584 F.3d 1304 (10th Cir. 2009) ...............................19

*Thornton v. City of Macon,* 132 F.3d 1395 (11th Cir. 1998)..................................28

*Trujillo v. City of Albuquerque,* 2009 WL 3260724 ..............................................28

*United States v. Briggs*, 720 F.3d 1281 (10th Cir. 2013) .......................................15

*United States v. Nevarez*, 55 F.4th 1261 (10th Cir. 2022) ...................................... 6

*Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154 (10th Cir. 2021)..... 13, 18, 26, 32

*White v. Pauly*, 580 U.S. 73 (2017)................................................................15, 24

**Statutes**

42 U.S.C. § 1983........................................................................2, 4, 5, 23

Colo.Rev.Stat. § 13-21-131 ............................................................... 2

Colo.Rev.Stat. § 18-3-202(1)(e) .......................................................32

Colo.Rev.Stat. § 18-3-206 ................................................................15

Colo.Rev.Stat. § 18-9-202(1.5)(b)(II)...............................................32

**Rules**

Fed. R. Civ. P. 12(b)(6)…………………………………………….…………5, 6

## STATEMENT OF RELATED CASES/APPEALS

There are no prior or related appeals. However, the Estate has since refiled its state claims in Colorado District Court, County of El Paso, Case No. 2025CV030855. That case is stayed pending this appeal.

## STATEMENT OF THE ISSUES PRESENTED ON APPEAL

The Estate of Wilford Deweese ("the Estate") has alleged that during a joint response by the Manitou Springs Police Department and El Paso County Sheriff's Office to investigate and arrest Wilford Deweese ("Deweese") in connection with a reported menacing involving a firearm, Deputy Ronnie Hancock used excessive force—or otherwise acted recklessly—by deploying his K-9 ("Jinx") to subdue Deweese, and that Deputy Daniel LeBaron, Officer Levi Hoover, and Officer Jeffrey Schuelke conspired and/or failed to intervene in that deployment. The Estate further alleges that Deputies Hancock and LeBaron, and Officers Hoover and Schuelke (collectively, "Defendants") used excessive deadly force by shooting Deweese as he pointed and then fired his gun at Jinx.

On their motions to dismiss, the District Court held it was not clearly established that Defendants violated Deweese's Fourth Amendment rights under the alleged circumstances, thereby entitling them to qualified immunity.

1

The sole issue presented in this appeal is whether the District Court erred in determining Defendants were entitled to qualified immunity.

## STATEMENT OF THE CASE

### I.    COURSE OF PROCEEDINGS.

The Estate filed its Complaint on April 9, 2024, naming Defendants in their individual capacities and asserting the following claims pursuant to the Fourth Amendment via 42 U.S.C. § 1983 ("§ 1983"), and Article II Section 7 of the Colorado Constitution via COLO.REV.STAT.§ 13-21-131 ("ELEIA"): (1) excessive intermediate K-9 force against Deputy Hancock, (2) failure to intervene in excessive intermediate K-9 force against Deputy LeBaron, Officer Hoover, and Officer Schuelke, (3) conspiracy to commit excessive intermediate K-9 force against all Defendants, and (4) excessive deadly force against all Defendants.

Defendants filed two separate motions to dismiss on August 9, 2024. The District Court granted the motions and dismissed the Complaint on March 21, 2025. The Estate timely filed its Notice of Appeal on April 18, 2025.

### II.    THE ESTATE'S ALLEGATIONS.

The Estate alleges that, on the night of April 11, 2022, Manitou Springs Police Officers Levi Hoover and Jeffrey Schuelke responded to a 911 call about a physical

altercation between two men involving a firearm. [JA 14–16, ¶¶ 41–49 and 53].[1] Thereafter, the officers located Deweese near the City's public square; he was standing between two buildings on a narrow ramp surrounded by a metal railing. The ramp led down into a sunken courtyard. [JA 15–16, ¶¶ 51–53]. With their guns drawn and pointed toward Deweese, Officers Hoover and Schuelke ordered Deweese to put his hands up and walk toward them, but Deweese did not comply. [JA 16–20, ¶¶ 53–66]. The officers were later joined by El Paso County Sheriff's Deputy Daniel LeBaron, and repeated similar commands to no avail for approximately 13 minutes before El Paso County Sheriff's Deputy Ronnie Hancock arrived on scene with his police dog Jinx. [JA 19–20, ¶¶ 64–73]. Deputy Hancock took control of the scene and began issuing additional commands for Deweese to surrender—expressly warning Deweese that Jinx would be deployed to bite him if he failed to comply. [JA 21–22, ¶¶ 75–83]. Deweese still did not comply and remained stationary near the building. [JA 22, ¶ 85]. Deweese allegedly exclaimed he would shoot Jinx. [JA 22–23, ¶¶ 84–87].

After Deweese refused commands for 20 minutes (roughly seven minutes after Deputy Hancock arrived), Deputy Hancock released Jinx. [JA 20 and 23, ¶¶ 73 and 90]. Defendants followed close behind Jinx with their guns drawn and pointed

---

[1] For ease of reference, Defendants follow the record on appeal citation convention used in the Opening Brief. "JA" refers to the joint appendix accepted by the Court on July 31, 2025.

toward Deweese. [JA 23–24, ¶¶ 90 and 98]. As Jinx approached Deweese, Deweese "backed up a few feet and retreated." [JA 26, ¶ 108]. Deweese then turned, drew a gun from his pocket, pointed it at Jinx, and fired two rounds. [JA 26–27, ¶¶ 108–112]. As this was occurring, Defendants returned fire on Deweese, killing him. [JA 28, ¶¶ 120–123].

## III.  ORDER OF DISMISSAL.

After considering the Estate's allegations and the relevant legal standards, the District Court assessed the § 1983 claims in light of Defendants' qualified immunity defense. As to the use of intermediate K-9 force, the District Court found it was not clearly established that deploying Jinx under such circumstances was objectively unreasonable or reckless, thereby rejecting the Estate's argument that Defendants recklessly created the need for deadly force. [JA 141–146]. Accordingly, the District Court similarly determined it was not clearly established that shooting a suspect as he drew and pointed a gun away from officers was objectively unreasonable. [JA 146–147]. Having reached this conclusion as to the use of intermediate and deadly force, the District Court found the Estate's § 1983 conspiracy and failure-to-intervene claims necessarily failed. [JA 147]. The District Court dismissed all § 1983 claims with prejudice and declined to exercise supplemental jurisdiction over the remaining ELEIA claims. [JA 147].

## SUMMARY OF THE ARGUMENT

The Complaint makes clear that the K-9 deployment and subsequent deadly force were not excessive, given both were objectively reasonable under the totality of the alleged circumstances. Moreover, the District Court, having properly considered the allegations, rightly determined that Defendants were entitled to qualified immunity from the Estate's § 1983 claims for lack of clearly established law. Specifically, the District Court applied the correct legal standard when assessing qualified immunity by examining the Estate's cited cases, surveying existing Supreme Court and Tenth Circuit precedent, and considering whether such precedent and/or other "general statements of the law" notified Defendants that their alleged conduct would clearly violate Deweese's Fourth Amendment Rights. Because the District Court correctly found that it would not, the Estate's § 1983 claims were properly dismissed with prejudice. The decision should be affirmed.

## ARGUMENT

### I.   STANDARD OF REVIEW AND RELEVANT LEGAL STANDARDS.

#### A.   Rule 12(b)(6) standard.

This Court reviews de novo a district court's grant of qualified immunity under Fed. R. Civ. P. 12(b)(6), *Berryman v. Niceta*, 143 F.4th 1134, 1140 (10th Cir. 2025), and may affirm its "ruling on any grounds adequately supported by the record, even grounds not relied upon by the district court." *United States v. Nevarez*, 55

5

F.4th 1261, 1265 n.1 (10th Cir. 2022) (cleaned up). To survive a motion to dismiss, a complaint "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere formulaic recitations of the elements of a cause of action will not suffice to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.    Qualified immunity standard.**

To overcome qualified immunity at the Rule 12(b)(6) stage, a plaintiff bears the "heavy two-part burden" of adequately alleging: (1) the violation, of a (2) clearly established constitutional right. *See Shepherd v. Robbins,* 55 F.4th 810, 815 (10th Cir. 2022); *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015); *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotations omitted). The qualified immunity defense "protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001).

The Court may conduct its qualified immunity analysis in whichever order it believes best suits this case. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the

Estate fails to satisfy either prong of this inquiry, this Court must grant qualified immunity. *Harrington*, 268 F.3d at 1186.

### C.    Objective reasonableness standard.

A claim of excessive force is examined for objective reasonableness. This standard "evaluates the force used … against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case." *Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

What constitutes reasonable action may seem quite different to someone facing a possible assailant or assessing a threat in real-time, than to someone analyzing the question at leisure. *Id.* at 396–97; *Phillips v. James*, 422 F.3d 1075–80 (10th Cir. 2005) (recognizing same). Courts must therefore assess "whether the totality of the circumstances justified the use of force, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Est. of Valverde by & through Padilla v. Dodge*, 967 F.3d 1049, 1060 (10th Cir. 2020) (cleaned up).

In making this determination, the Court should weigh three primary factors: (1) the severity of the crime underlying the seizure; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect actively resisted or attempted to evade arrest by flight. *See id.* (citing *Graham*, 490 U.S. at 396).[2]

## II.  THE DISTRICT COURT DID NOT ERR WHEN IT APPLIED REASONABLE FACTUAL INFERENCES TO ITS QUALIFIED IMMUNITY ANALYSIS.

The Estate wrongly argues that: "the [District C]ourt interpreted key facts in a light most favorable to defendant officers and even speculated that facts not included in the Complaint favored officers. Such interpretations were erroneous and materially infected the qualified immunity analysis." [Opening Brief, p. 11]. The Estate's argument is materially flawed in that: it misstates the holding in *Mundt v. Gadziala* regarding the motion to dismiss standard of review; it misstates the standard of review applied by the District Court; and it overlooks a key component of the objective reasonableness standard imposed in *Graham*. [Opening Brief, pp. 11–13].

First, the Estate proffers *Mundt* in support of its assertion that "[a] fundamental principle of review for motions to dismiss requires district courts to

---

[2] Referred to herein as the "*Graham* factors."

interpret complaint facts *and all inferences drawn therefrom* in the light most favorable to the plaintiff," and misstates its holding as "reversing immunity grant and admonishing district court for improperly crediting defense-friendly factual assertions inconsistent with complaint allegations." [Opening Brief, p. 11, citing *Mundt v. Gadziala*, No. 24-1041, 2024 WL 5087212, at *1, 6 (10th Cir. 2024) (*emphasis* in original)]. But *Mundt* did not state that any and all possible inferences must favor a plaintiff, nor did it find that the district court "improperly credit[ed] defense-friendly factual assertions."[3] The Estate's assertion that *Mundt* stands for the "fundamental principle … [that] district courts [are required] to interpret complaint facts *and all inferences drawn therefrom* in the light most favorable to the plaintiff" is wrong. [Opening Brief, p. 11 (*emphasis* in original)]. Rather, the law requires only that "reasonable inferences" be made in favor of the plaintiff when assessing qualified immunity at the motion to dismiss stage. *See Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025); *Griffith v. El Paso Cnty., Colorado*, 129 F.4th 790, 806 (10th Cir. 2025) (citing *Lucas v. Turn Key Health Clinics, LLC*,

---

[3] *Mundt* did not address inferences in terms of favorability, it addressed them in terms of conclusory allegations: "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Mundt*, 2024 WL 5087212, at *4 (quoting *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (cleaned up)). Instead, the *Mundt* court found that its review was "hampered because the district court did not delineate the salient facts and inferences solely from the complaint" and "the district court did not parse the complaint for well-pleaded facts and inferences." *Id.* at *6.

58 F.4th 1127, 1136 (10th Cir. 2023)). As discussed herein, the inferences the Estate asks this Court to make are not reasonable.

Second, the Estate wrongly credits the District Court with acknowledging its misleading statement of law: "[t]he district court acknowledged this principle in its recitation of standards [JA 139] but failed to apply it." [Opening Brief, p. 11]. Actually, the District Court correctly recited the law, stating: (1) "[i]n doing so, the court 'must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff;'" (2) "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief;" and (3) "A court will 'disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.'" [JA 138–39]. The District Court never stated it must interpret complaint facts and all possible inferences drawn therefrom in the light most favorable to the plaintiff.

Third, the Estate asserts that "[a]t the motion-to-dismiss stage, a court's duty is to credit allegations and inferences favoring Plaintiff, not to invent hypothetical dangers for defendant officers' benefit." [Opening Brief, p. 13]. However, the Estate's assertion overlooks the requirement that courts must also judge force from the perspective of a reasonable officer on the scene. *Graham*, 490 U.S. at 396; *see also Thomas v. Durastanti*, 607 F.3d 655, 664 (10th Cir. 2010) (applying standard

10

in resolving motion to dismiss). The District Court was simply not required to view any and all possible inferences in the Estate's favor—only reasonable ones supported by non-conclusory factual averments.

The Estate next argues that the District Court erred when it "used the Complaint's allegation that Mr. Deweese had consumed one eight-ounce beer to infer he was unimpaired, which it used to distinguish this Court's precedent in *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997)." The Estate argues that the District Court should have also considered that Deweese "came from a bar area where he had been for some time," and that "officers found it strange that Deweese failed to walk toward police when demanded"[4] to reach "a reasonable inference favoring Plaintiff, not against him (sic), that he may have been intoxicated or otherwise impaired." [JA 108–09].

The Estate's intoxication argument fails as it was not the District Court's only or even its primary basis for distinguishing *Allen*. Rather, the District Court distinguished *Allen* on the length of time between the arrival of officers on the scene and the deployment of force:

> As it happens, *Allen* is one of the cases that the Supreme Court considered when it determined that there was no violation of clearly established law in *City of Tahlequah*. It noted there that while "the officers in *Allen* responded to a potential suicide call by sprinting toward a parked car, screaming at the suspect, and attempting to physically wrest a gun from his hands," the officers in *City of*

---

[4]  This "fact" does not appear in the Complaint.

*Tahlequah* "by contrast, engaged in a conversation with [the decedent], followed him into a garage at a distance of 6 to 10 feet, and did not yell until after he picked up a ham-mer." *City of Tahlequah*, 595 U.S. at 13. This case is more like the latter than like *Allen*. As in *City of Tahlequah*, the record is clear that the officers attempted to speak with Mr. Deweese for some twenty minutes before they ever deployed any force. In *Allen*, by contrast, '[t]he entire sequence, from the time [Defendant] arrived to the time [decedent] was killed, lasted approximately ninety seconds.'").

\*          \*          \*

The fact that Ceballos was "in his own driveway" at the time of the shooting and "posed harm to no one" also meaningfully distinguishes that case from this one, where Mr. Deweese was in public, in a central part of town near at least some bystanders, and had already brandished his gun at the Royal Tavern, resulting in the bartender calling 911. Dkt. 1 at ¶¶ 44–46. Under the totality of these circumstances, it was not unreasonable for the Defendants to fear that Mr. Deweese—and the possibility that an errant bullet fired from his gun might hit an onlooker—posed a significant risk to public safety.

[JA 144–45 (brackets in original)]. Even accepting the Estate's assertion that the District Court improperly inferred Deweese's sobriety, any improper inference is irrelevant given the totality of the remaining circumstances discussed herein. The same is true of the Estate's other arguments regarding the District Court's analysis of who shot first, how long it would take Deweese to start shooting at Defendants, and whether the potential for an errant bullet threatened the public. [Opening Brief, pp. 11–13]. As discussed herein, even if the Estate is correct, these "improper inferences" do not undermine Defendants' qualified immunity.

## III. THE DISTRICT COURT DID NOT ERR IN DISMISSING THE ESTATE'S EXCESSIVE INTERMEDIATE FORCE CLAIMS.

The Estate's assertion that the District Court misapplied the law in addressing its excessive intermediate/K-9 force claims is misguided. First, the District Court did not err by proceeding straight to an assessment of clearly established law, without first addressing each of the *Graham* factors. *See Pearson*, 555 U.S. at 236. Second, as more fully addressed in Section III.C., the District Court did not err in refusing to consider various non-binding district court decisions involving K-9 deployments when assessing Defendants' qualified immunity. *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017); *see also Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ([D]istrict court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity"). Nor did it err by analyzing *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997) and *Estate of Ceballos v. Husk*, 919 F.3d 1204 (10th Cir. 2019) in this context, given that, other than *Vette v. K-9 Deputy Sanders*, 989 F.3d 1154 (10th Cir. 2021)[5], those were the only binding cases presented by the Estate.[6] [JA 83–88 and 105–109];

---

[5] Defendants separately address *Vette* in Section III.C., below.

[6] This similarly dispenses with any argument that the District Court applied an incorrect legal standard to adjudicate the excessive intermediate force claim. The District Court was simply distinguishing the precedential use-of-force cases the Estate identified in responding to the motions to dismiss.

13

*see also Herring v. Keenan*, 218 F.3d 1171, 1175–76 (10th Cir. 2000) ("[T]he burden of identifying clearly established law rests with the plaintiff.").

The Estate's procedural and otherwise hyper-technical arguments notwithstanding, this Court may affirm dismissal pursuant to its own de novo review of the allegations. *Nevarez*, 55 F.4th at 1265 n.1. Per the allegations and as demonstrated below, the Estate has not overcome either prong of Defendants' qualified immunity.

### A.     Deputy Hancock's intermediate force was not excessive: His decision to deploy Jinx was objectively reasonable, not reckless.

The Estate's failure to plausibly allege that Jinx's deployment was objectively unreasonable under the claimed circumstances is fatal to this appeal. The operative *Graham* analysis is as follows:

### 1.     The severity of Deweese's suspected pre-deployment crimes warranted Jinx's deployment.

The Estate asserts Deweese's reported/suspected pre-deployment crimes were misdemeanors. The Estate is wrong. First, the Complaint alleges Deweese attempted to pull a gun on a fellow bar patron, that the bartender observed the encounter and the gun, and that this was reported to police. [JA 14–15, ¶¶ 41–49 and 53]. On these facts it would have been reasonable for Defendants to suspect Deweese had, "by [ ] threat or physical action, ... knowingly place[d] or attempt[ed] to place another

person in fear of imminent serious bodily injury... by the use of a firearm..."; a class five felony. COLO.REV.STAT. § 18-3-206. The Estate also alleges that Defendants should have considered Deweese's legitimate right to defend himself against a "crowd of hostiles" [JA 14 ¶ 44]. The Complaint, however, does not allege Defendants had this information and it is irrelevant to the Court's analysis. *Hernandez v. Mesa*, 582 U.S. 548, 554 (2017) ("The qualified immunity analysis [ ] is limited to 'the facts that were knowable to the defendant officers' at the time they engaged in the conduct in question.") (quoting *White v. Pauly*, 580 U.S. 73, 77 (2017))); *see also United States v. Briggs*, 720 F.3d 1281, 1289 (10th Cir. 2013) (observing that "weapons—guns, knives, or others—whether legally carried or not, can be used for unlawful purpose," and then concluding that officers need not "disregard indications that the suspect is carrying a concealed weapon at his waistline merely because it is possible the suspect has a concealed-carry permit").[7]

Even so, the Estate argues that "when officers deployed the canine, they suspected at most a misdemeanor or no crime at all." [Opening Brief, p. 21 (citing *Estate of Taylor*, 16 F.4th at 763–64)]. The Estate parlayed this conclusory statement about what Defendants supposedly knew or suspected when Jinx was deployed into

---

[7] The Estate's argument over whether Defendants had sufficient grounds to arrest (or otherwise detain) Deweese [Opening Brief, pp. 20–23 and 29] similarly has no bearing on the Court's excessive force inquiry, given the Court "must assume the arrest was valid" when assessing this claim. *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012).

a dissertation on Deweese's Second Amendment right to carry a concealed weapon and defend himself in the bar. [Opening Brief, pp. 21-22]. The Estate's reasoning is flawed for several reasons.

First, the narrowly selected portion of *Estate of Taylor* quoted by the Estate glosses over its relevant holding. For instance, in *Flores v. Henderson*, this Court found *Estate of Taylor* to provide instruction on the very issue argued by The Estate:

> One case is instructive. In *Estate of Taylor* [ ], we held it was reasonable for an officer to continue an investigation despite evidence no crime was taking place. In that case, an officer responded to a report that someone "flashed" a gun. He saw an individual matching the description enter a 7-Eleven convenience store. When the suspect exited the store, the officer confronted him. The decedent reached into his waistband as if to draw a gun, and he was shot and killed. His estate asserted the officers were reckless and unreasonable because they "should have just driven away when they observed [the decedent] exit from the 7-Eleven without incident." We rejected this argument and found "[w]hile the 9-1-1 call reporting a male flashing a gun could have been describing a low-level misdemeanor, or even no crime at all, **we are not aware of any precedent indicating that a reasonable officer would have been obliged to drive away and forgo an investigation, and Plaintiffs offer us none.**"

*Flores v. Henderson*, 101 F.4th 1185, 1196 (10th Cir. 2024) (quoting *Estate of Taylor*, 16 F.4th at 772–73 (cleaned up, **emphasis** added)). As in *Flores*, the Estate points to no precedent requiring Defendants to forgo their investigation or an arrest given the knowledge they had of Deweese brandishing a firearm, even if they suspected self-defense.

16

Second, a claim of self-defense does not *per se* negate or vitiate an officer's reasonable belief that probable cause existed to effectuate an arrest for felony menacing.[8] In *Sanchez v. Labate,* this Court analyzed whether some evidence of self-defense could negate probable cause and found that: (1) plaintiff failed to cite a single Supreme Court or Tenth Circuit decision holding that law-enforcement officers must resolve a claim of self-defense before arresting someone; (2) an affirmative defense to a crime negated probable cause only when the defense was "conclusively" established; and (3) "the complaint, although certainly alleging evidence of self-defense, presented a sufficiently ambiguous situation that one could not infer that self-defense was *conclusively* established by the evidence known to the officers." *Sanchez v. Labate*, 564 F. App'x 371, 373–74 (10th Cir. 2014); *see also Gumble v. Waterford Twp.*, 171 F. App'x 502, 507 (6th Cir. 2006) (concluding that defendant's "protestations of self-defense did not suffice to eliminate probable cause"). Thus, even if there was some evidence that Deweese may have acted in self-defense when he brandished the firearm during an altercation in the bar, Defendants "had no duty to consider [it] in deciding whether they had probable cause to arrest" Deweese. *Sanchez*, 564 Fed.Appx. at 374.

---

[8] Again, the Complaint does not allege how Defendants would have known Deweese was acting in self-defense.

17

Third, the Complaint also alleges Deweese expressly threatened to shoot Jinx as Deputy Hancock was issuing commands. [JA 22–23, ¶¶ 84–87]. While Plaintiff argues Jinx was "property" and not a "human life" [Opening Brief, pp. 22–23], this assertion overlooks that Defendants could have also reasonably feared for their own safety under these circumstances, and concluded Deweese knew this as well, thus constituting a second instance of felony menacing. Besides, whether Defendants had probable cause to believe Deweese had in fact committed a felony is irrelevant to the *Graham* analysis, as it is "the severity of the *suspected* crime" that must be considered. *Lee v. Tucker*, 904 F.3d 1145, 1158 (10th Cir. 2018) (*emphasis* added).

Deweese's suspected pre-deployment felonies are sufficient to push the first *Graham* factor in favor of objective reasonableness. *See Vette*, 989 F.3d at 1170 ("[O]ur binding precedent indicates the first *Graham* factor weighs against the plaintiff when the crime at issue is a felony...") (citing *Lee*, 904 F.3d at 1149)).

### 2.    *Deweese posed a sufficient threat to warrant Jinx's deployment.*

In assessing this factor, the Court must consider whether an officer could reasonably conclude he (or others) were in danger when force was used. *See Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020). "A reasonable perception of imminent danger, even if mistaken, may be consistent with the reasonable use of [ ] force." *Est. of Ronquillo by & through Est. of Sanchez v. City & Cty. of Denver*, 720 F. App'x 434, 439 (10th Cir. 2017). In situations where a suspect also poses a threat

18

to the public, the Court must weigh "the level of force used by the officer and the degree of risk posed to innocent bystanders," in addition to "the relative culpability of the parties involved." *See Cordova v. Aragon*, 569 F.3d 1183, 1192–93 (10th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372 (2007)). "[This *Graham*] factor is generally the most important to determine whether an officer acted reasonably." *Palacios v. Fortuna*, 61 F.4th 1248, 1256 (10th Cir. 2023).

The Estate's assertion Deweese posed no threat to officers or the public in the lead-up to Jinx's deployment is misguided. The Estate argues that because Deweese had allegedly shown Defendants the contents of his bag and his empty waistband, that they should have concluded he was unarmed. [Opening Brief, pp. 13 and 24]. The Estate again overlooks several key points. As alleged, Defendants were aware of the following prior to Jinx's deployment: (1) Deweese may have committed a felony with a firearm, (2) Deweese had threatened to shoot Jinx, confirming he was still armed and willing to use the firearm, (3) Deweese continually refused to comply with commands, objectively signaling he would not surrender peacefully, (4) Deweese was in a confined space, and (5) Deweese was located near a public square in downtown Manitou Springs, thereby posing a heightened risk to nearby civilians. [*Supra*].

Under these circumstances it would not have been unreasonable or reckless[9]

for Deputy Hancock to deploy Jinx. *See, e.g.*, *Gutierrez v. Hackett* 131 F. App'x

621, 623 (10th Cir. 2005) (finding K-9 deployment reasonable against a suspect who

had repeatedly ignored commands from a confined space); *Thomson v. Salt Lake

Cnty.*, 584 F.3d 1304, 1317 (10th Cir. 2009) (finding K-9 deployment reasonable

against armed suspect); *Moya v. City of Clovis*, 829 F. App'x 346, 349 (10th Cir.

2020) (finding K-9 deployment reasonable to subdue uncooperative and unarmed

suspect who, the court concluded, posed a threat to bystanders by refusing

commands to surrender). Accordingly, the second and most decisive *Graham* factor

also favors objective reasonableness.

### 3. *Deweese actively resisted arrest prior to Jinx's deployment.*

"The third *Graham* factor asks whether the individual is actively resisting

arrest or attempting to evade arrest by flight." *Est. of George v. City of Rifle,

Colorado*, 85 F.4th 1300, 1316 (10th Cir. 2023) (cleaned up). "But resistance need

not be physical," and this factor tends to favor intermediate force "when an

individual refuses to obey an officer's lawful orders." *Andersen v. DelCore*, 79 F.4th

1153, 1165 (10th Cir. 2023) (cleaned up). This is because "[o]fficers must be able

to employ force to enforce their lawful orders. Otherwise, an officer's power to give

---

[9] Additional analysis of the Estate's reckless creation theory is provided in Section
IV.

lawful orders 'would be hollow.'" *Id.* at 166 (quoting *Helvie v. Jenkins*, 66 F.4th 1227, 1238 (10th Cir. 2023)).

The Estate contends that Deweese's alleged conduct prior to Jinx's deployment—like refusing lawful commands for 20 minutes and threatening to shoot a police dog—did not amount to "actively resisting." [Opening Brief, pp. 25–30]. But the cases it cites are either materially distinguishable or directly contravene its position. For instance, unlike Deweese, the suspect in *Herrera v. Bernalillo Cnty. Bd. of Cnty. Comm'rs* followed all commands before being "gang tackled" by multiple officers. 361 F. App'x 924, 928 (10th Cir. 2010). In *Ibarra v. Lee*, the Court found the suspect's "minimal and defensive" act of waving his arms did not justify *deadly* force. 135 F.4th 1257, 1265 (10th Cir. 2025). Needless to say, shooting a noncompliant suspect is not the same as deploying a K-9 to subdue him, and repeatedly refusing lawful orders and threating to shoot a police dog are certainly not "minimal."

In *Jordan v. Jenkins*, the suspect was immediately tackled to the ground and kicked for failing to comply with verbal orders that were given six seconds earlier, 73 F.4th 1162, 1166 (10th Cir. 2023), while the suspect in *Emmett v. Armstrong* was tased *after* being subdued. 973 F.3d 1127, 1136 (10th Cir. 2020). Also unlike Deweese, neither of these suspects was believed to be armed. *Myers v. Brewer* involved officers who had used intermediate force within "eight seconds" of an

unarmed suspect refusing subsequent orders, despite the fact he had complied with all prior orders. 773 F. App'x 1032, 1037 (10th Cir. 2019). This is not what happened here.

The Estate's remaining cases fare no better. *See Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007) (where suspect had overtly "complied with [officer] commands to exit [his] residence"); *Bridges v. Yeager*, 352 F. App'x 255, 259 (10th Cir. 2009) (finding "the fact that a suspect [who merely slipped her handcuffs] was non-compliant or resisted arrest *in isolation* does not authorize the use of excessive force.") (emphasis added); *Aldaba v. Pickens*, 777 F.3d 1148, 1158–59 (10th Cir. 2015) (finding only "passive" resistance where unarmed mentally ill hospital patient was tased after walking away from officer) (*Aldaba I*)[10]; *Nosewicz v. Janosko*, 754 F. App'x 725, 733 (10th Cir. 2018) (discussing active resistance and acknowledging that "if [the prisoner plaintiff had] refused to obey a command to leave the cell, such refusal would have justified [the officer's] use of physical force to effectuate his removal from the cell."). In no way do these cases bolster the Estate's argument.

Nor has the Estate meaningfully refuted *Andersen v. DelCore* (*supra*). The Estate's contention that *Andersen* merely involved an officer "grabbing and twisting" [Opening Brief, p. 28] the suspect's arm is inaccurate. There, the officer's

---

[10] *Aldaba I* was later reversed, 577 U.S. 972 (2015), and officers were entitled to qualified immunity. *See Aldaba v. Pickens*, 844 F.3d 870 (10th Cir. 2016) (*Aldaba II*).

decision to use his TASER was deemed reasonable following the suspect's ongoing refusal to follow commands. 79 F.4th at 1161. *Andersen* also cited to *Helvie*, 66 F.4th at 1238 and *Mecham v. Frazier*, 500 F.3d 1200, 1204–05 (10th Cir. 2007), which found heightened physical force to be objectively reasonable where unarmed suspects had repeatedly refused lawful commands. Like *Anderson*, these cases further contradict the Estate's argument.

The Complaint shows Deweese had continually resisted arrest by refusing multiple lawful orders over an extended period, despite Deputy Hancock's express warnings about Jinx. [JA 21–22, ¶¶ 75–83 and 90]. This conduct pushes the third *Graham* factor in favor of objective reasonableness. Because the *Graham* factors show Deputy Hancock's decision to deploy Jinx was objectively reasonable, he was properly entitled to qualified immunity.

### B. The failure-to-intervene and conspiracy claims necessarily fail.

Recognizing that Deputy LeBaron, Officer Hoover and Officer Schuelke were not directly responsible for deploying Jinx, the Estate postured its excessive intermediate force claim against them under a conspiracy and/or failure-to-intervene theory. [JA 29]. For either of these theories to survive, however, the Estate must have plausibly alleged that Deputy Hancock's decision to deploy Jinx constituted excessive force. *See Rowell v. Bd. of Cty. Commissioners of Muskogee Cty., Oklahoma*, 978 F.3d 1165, 1175 (10th Cir. 2020) ("[A] plaintiff can maintain a claim

for failure to intervene only when some other officer used excessive force."); *Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1231 (10th Cir. 2020) ("For a valid § 1983 conspiracy claim, plaintiffs must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient.") (internal quotations omitted)).

Plaintiff's failure to plausibly allege that Jinx's deployment was objectively unreasonable under the claimed circumstances, as previously shown, is fatal to these claims. Deputy LeBaron, Officer Hoover and Officer Schuelke are entitled to qualified immunity from the excessive intermediate force claims on this basis.

### C.    No clearly established law prohibited Jinx's deployment under the alleged circumstances.

#### 1.    *Legal background.*

"A plaintiff may satisfy [the clearly established law] standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Surat v. Klamser*, 52 F.4th 1261, 1276 (10th Cir. 2022) (cleaned up). Although past cases need not involve "precisely the same facts," *Casey*, 509 F.3d at 1284, "the clearly established law must be 'particularized' to the facts of the case," *White*, 580 U.S. at 79 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Under this standard, it is the plaintiff's burden to identify a case where an official acting under sufficiently similar circumstances was found to have violated the Fourth Amendment. *See White v. Pauly*, 580 U.S. 73, 79–80 (2017); *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020). "The dispositive question is whether the violative nature of the *particular conduct* is clearly established." *Aldaba*, 844 F.3d at 877 (emphasis in original). To satisfy this element, "existing precedent must have placed the statutory or constitutional question beyond debate," *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015), "a demanding standard the Supreme Court says 'requires a high degree of specificity,'" *Lewis v. City of Edmond*, 48 F.4th 1193, 1198 (10th Cir. 2022) (quoting *D.C. v. Wesby*, 583 U.S. 48, 63 (2018)); *see also Mullenix*, 577 U.S. at 12.

> We have repeatedly told courts ... not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

(cleaned up, *emphasis* in original). Here, "[i]t is particularly important that a Fourth Amendment right be clearly established in a specific factual scenario because it can be difficult for an officer to determine how the prohibition against excessive force will apply in novel situations." *Arnold v. City of Olathe*, 35 F.4th 778, 793 (10th Cir. 2022). Additionally, while "there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing

25

precedent does not address similar circumstances," *id.* (cleaned up), "a body of relevant case law is usually necessary," *Wesby*, 583 U.S. at 64 (cleaned up).

2. *Application.*

As an initial matter, the Estate's "clearly established" position is based on the same flawed arguments previously addressed, including (1) the Estate's incorrect legal conclusion that all possible inferences must be construed in its favor, and (2) that even unreasonable inferences that are unsupported by the "facts" of the Complaint somehow substantiate its claims.

What is more, each of the Estate's cited cases is factually and/or legally distinguishable and does not lend the necessary legal support to overcome Defendants' qualified immunity. The Estate relies on the following Tenth Circuit decisions to maintain its intermediate force claim:

- *Luethje v. Kyle*, where police K-9 was deployed without warning against an unarmed, non-threatening suspect who was asleep in his bed. 131 F.4th 1179, 1196–1201 (10th Cir. 2025);

- *Vette v. K-9 Unit Deputy Sanders*, where police K-9 was deployed against suspect after he was subdued and handcuffed. 989 F.3d 1154, 1159 (10th Cir. 2021);

- *McCoy v. Meyers*, where officers continued striking a suspect who had already been subdued and restrained. 887 F.3d 1034, 1038 (10th Cir. 2018);

- *Morris v. Noe*, finding excessive intermediate force was used against an unarmed, compliant misdemeanor suspect who was not warned about the impending force. 672 F.3d 1185, 1195–96 (10th Cir. 2012);

- *Casey v. City of Federal Heights*, finding excessive intermediate force was used against unarmed, compliant misdemeanor suspect who was not warned about impending force. 509 F.3d at 1279–85;

- *Cavanaugh v. Woods Cross City*, finding excessive intermediate force was used against unarmed individual who was not suspected of a crime or warned about impending force. 625 F.3d 661, 662–665 (10th Cir. 2010); and

- *Buck v. City of Albuquerque*, finding it was excessive to tear gas, pepper spray and fire non-lethal projectiles on peaceful protestors. 549 F.3d 1269, 1290–91 (10th Cir. 2008).

These cases are materially distinguishable from the Estate's alleged facts and do not overcome Defendants' qualified immunity. *See Herold v. Christensen*, 2025 WL 2237557, at *4 (10th Cir. Aug. 6, 2025) (finding cited case "materially distinguishable" and therefore insufficient to overcome qualified immunity "because they all involved suspects who put up no resistance, posed no threat to the safety of officers, themselves, or others, or had already been subdued.").

The Estate also relies on several non-binding district court decisions to overcome qualified immunity. [Opening Brief, pp. 41–42]. The Estate cites no authority for the proposition that such cases have any bearing on this Court's analysis of clearly established law. *Est. of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) ("[W]e can disregard district-court decisions cited by the estate, which can be persuasive on the merits of a constitutional claim but cannot clearly establish what the law is."). These cases are also distinguishable. For instance:

- *Cook v. City of Albuquerque* concerned an indiscriminate K-9 deployment, without adequate warning, where innocent bystander was bitten multiple

times, despite complying with the officers' orders. 639 F. Supp. 3d 1185, 1197–1203 (D.N.M. 2022);

- *Mullins v. City of Boulder* turned on allegations officers deployed a K-9 (without adequate warning) to bite a non-violent suspect in his home and then allowed the dog to continue biting the suspect after confirming he was unarmed and had been subdued. 575 F. Supp. 3d 1360, 1365 (D. Colo. 2021);

- *Erickson v. City of Lakewood* involved a non-threatening misdemeanor suspect who was bitten twice on the neck by a K-9, including once long after he had been subdued. 489 F. Supp. 3d 1183, 1197–98 (D. Colo. 2020);

- *Brown v. Whitman* involved a K-9 released to search for a suspect without warning, which ultimately attacked an innocent bystander on her own property. 651 F. Supp. 2d 1216, 1226 (D. Colo. 2009);

- *Katterman v. Salt Lake Cnty.* involved a suspect that posed no objective safety risk due to his advanced age, known unarmed status, and the presence of multiple officers within an unconfined space. No. 2:13-CV-1122, 2017 WL 1207518, at *6–8 (D. Utah Mar. 31, 2017); and

- *Trujillo v. City of Albuquerque* emphasized that no warnings were issued, along with the fact the K-9 was permitted to bite the suspect's face after officers determined he posed no threat. 2009 WL 3260724 at *4.

The Estate also cites the following out-of-circuit decisions:

- *Cooper v. Brown*, finding clearly established excessive force where K-9 was deployed against misdemeanor suspect that officers had no reason to believe was armed or would resist arrest, and K-9 continued biting suspect long after any threat had passed. 844 F.3d 517, 521 (5th Cir. 2016);

- *Campbell v. City of Springboro*, involving separate instances of a K-9 being deployed without warning against two unarmed suspects and permitted to bite them multiple times for extended periods. 700 F.3d 779, 783–85 (6th Cir. 2012);

28

- *Chew v. Gates*, where K-9 was deployed against an unarmed, compliant individual, bit him three times, dragged him up to ten feet, and "nearly severed" his arm. 27 F.3d 1432, 1441–42 (9th Cir. 1994);

- *Priester v. City of Riviera Beach*, where K-9 was deployed against an unarmed, compliant individual and permitted to bite him multiple times for an extended period. 208 F.3d 919, 923–924 (11th Cir. 2000);

- *Thornton v. City of Macon*, where a compliant and unarmed non-felony suspect was violently assaulted by multiple officers after they unlawfully entered his home. 132 F.3d 1395, 1397–1400 (11th Cir. 1998); and

- *Landon v. City of N. Port*, where K-9 was deployed against a suicidal and virtually unconscious individual that officers knew had lost a significant amount of blood, who was not suspected of a crime or of possessing a firearm. 745 F. App'x 130, 132 (11th Cir. 2018).

The circumstances of these cases are again nothing like what was alleged in the Complaint. Not only was Deweese armed with a pistol, suspected of felonies, noncompliant, and warned, the Estate does not claim that Jinx ever bit him. These cases do not overcome Defendants' qualified immunity.

## IV.  THE DISTRICT COURT DID NOT ERR IN DISMISSING THE ESTATE'S EXCESSIVE DEADLY FORCE CLAIMS.

The Estate argues the District Court failed to properly address its reckless creation theory in dismissing this case. [Opening Brief, pp. 17–18]. Specifically, The Estate asserts the District Court erred by requiring a preliminary showing that Jinx's deployment, as alleged, amounted to a clearly established violation of Deweese's Fourth Amendment rights for the Estate to maintain its excessive deadly force claim

under a reckless creation theory. The Estate is again mistaken. *See, e.g.*, *Flores v. Henderson*, 101 F.4th 1185, 1197–99 (10th Cir. 2024) (examining liability under a reckless creation theory by addressing whether officer's precipitating conduct violated clearly established law). The approach utilized in *Flores* stems from the fact that the inquiry into whether an officer has acted recklessly "stays objective," and turns on "whether every reasonable officer would know that his or her conduct recklessly created an unreasonable risk of harm." *Id.* at 1195. The District Court's treatment of this issue was no different.

While the Estate seemingly attempts to distinguish between "reckless" and "unreasonable" conduct for purposes of its reckless creation theory, any distinction that may otherwise exist is mooted by the fact that precipitating conduct must be unjustifiable and unreasonable to be reckless. *See id.* at 1194–96 (observing that "recklessness" in this context connotes an "unjustifiable" and "unreasonable" risk of harm, in upholding officer's proactive attempt to locate and subdue an armed/threatening suspect that precipitated the need for deadly force). Moreover, while the Estate claims a finding that Jinx's deployment was "reckless" is sufficient to show excessive deadly force, this is not the law. *See Flores*, 101 F.4th at 1194 ("Whether an officer recklessly creates the need to use force is merely one important consideration in the totality of the circumstances.") (cleaned up)).

## A.    Defendants' use of deadly force was objectively reasonable.

"Apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Reavis Est. of Coale v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020) (cleaned up, citation omitted). "Therefore, the inquiry is: Whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to [any] underlying intent or motivation." *Palacios*, 61 F.4th at 1256 (cleaned up). The use of deadly force is justified where officers have "probable cause to believe that there was a threat of serious physical harm to [themselves] or others." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (cleaned up)). "Courts are particularly deferential to the split-second decisions police must make in determining precisely when a deadly threat has passed." *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1177 (10th Cir. 2020). Again, "[e]ven a mistaken view of the facts does not preclude a finding that an officer acted reasonably." *Palacios*, 61 F.4th at 1256 (citing *Thomas*, 607 F.3d at 666).

The Court's analysis should again turn on the *Graham* factors.[11] *See id.*

---

[11] Notably, the Estate made no attempt to rebut the first and third *Graham* factors concerning the deadly force claim at the District Court. [*See generally*, JA 71–92]... Thus, the Estate has forfeited this argument by failing to preserve it for appeal. *Shively v. Utah Valley Univ.*, No. 20-4088, 2022 WL 1021614, at *6 (10th Cir. Apr. 6, 2022) ("[A] party forfeits arguments not raised at the district court.") (citing *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011)).

### 1. *The severity of Deweese's underlying crimes favor Defendants.*

In addition to the suspected felonies discussed in Section III.A.1., before Defendants opened fire, Deweese drew a gun from his pocket and pointed it at Jinx. [JA 26–27, ¶¶ 107–111]. When Defendants opened fire Deweese shot twice at Jinx. [JA 26–28, ¶¶ 108–112 and 120]. On these allegations Defendants could have reasonably suspected Deweese of one or more of the following actual or attempted felonies: aggravated cruelty to a law enforcement animal (COLO.REV.STAT. § 18-9-202(1.5)(b)(II)), first degree assault on a peace officer (COLO.REV.STAT. § 18-3-202(1)(e)), and/or another act of felony menacing (*supra*). This *Graham* factor necessarily favors objective reasonableness. *Vette*, 989 F.3d at 1170; *Est. of George*, 85 F.4th at 1316.

### 2. *Deweese posed a sufficient threat to warrant deadly force.*

In weighing the second *Graham* factor when deadly force is used against an armed suspect, this Court must look to the four sub-factors articulated in *Estate of Larsen* to assess the "degree of threat" facing officers when deadly force was used. These sub-factors include: "(1) whether the officer ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the

suspect." *Estate of Larsen*, 511 F.3d at 1260.[12] Consistent with *Graham*, these sub-factors must be judged from the perspective of a reasonable officer on scene. *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015).

With respect to verbal commands, the Complaint does not allege that any meaningful amount of time elapsed between Deweese drawing and firing his weapon and Defendants opening fire. Thus, no additional warning would have been required. *Est. of Smart*, 951 F.3d at 1175 (finding no duty to warn in "rapidly evolving circumstances involving deadly threats."). Although the Estate argues Defendants should have expressly warned Deweese about the potential for deadly force when he verbally threatened to shoot Jinx [Opening Brief, p. 36], this Court "has held the warning does not need to be specifically that officers are about to open fire." *Palacios*, 61 F.4th at 1259 (citing *Thomson*, 584 F.3d at 1318–19). Here, the allegations show that Defendants, with their guns drawn and pointed, gave numerous warnings and commands for Deweese to surrender; he simply chose not to. Any conclusion that Deweese would not have known he risked being shot when he drew his pistol as officers held him at gunpoint strains logic and is simply incorrect.

As it relates to hostile motions, the Estate argues (in part) that the District Court erred by concluding Deweese shot first and could quickly turn his gun on Defendants. [Opening Brief, pp. 12–13]. But even eliminating these conclusions

---

[12] Referred to herein as the "*Larsen* sub-factors."

does not change the objective reasonableness analysis because Deweese's act of drawing his weapon as Defendants approached to subdue him is sufficient to demonstrate objective reasonableness. Indeed, this Court has upheld deadly force where the suspect had not even drawn or pointed his weapon, let alone decided to fire it near a public square.[13] *See, e.g.*, *Palacios*, 61 F.4th at 1255 ("[E]ven if Mr. Palacios was not pointing his gun directly at the officers (and even assuming he intended to surrender or cover [his] wound), such [ ] is not material.") (parenthetical in original); *Johnson v. City of Roswell*, 752 F. App'x 646, 651 (10th Cir. 2018) (finding suspect "posed a deadly threat and that the application of deadly force was necessary" where suspect was merely "carrying a gun in the 'low ready position,' with the gun moving up and down as he walked."); *see also Larsen*, 511 F.3d at 1260 ("[a] reasonable officer need not await the glint of steel" before resorting to deadly force); *St. George v. City of Lakewood, Colorado*, 2024 WL 3687780, at *1–5 (10th Cir. Aug. 7, 2024) (finding no clearly established violation where officer opened fire as suspect held his weapon in "low-ready" position); *Cruz v. City of Deming*, 138 F.4th 1257, 1269 (10th Cir. 2025) (upholding deadly force and recognizing that

---

[13] With respect to the threat Deweese posed to bystanders and the District Court's relevant findings on this matter, the Estate cannot legitimately counter these points. The Complaint itself includes images that were admittedly captured by a nearby "witness." [JA 16, ¶ 54]. Moreover, nothing in the Complaint indicates why Defendants would have been unreasonable in perceiving a public threat from an armed, non-compliant felon standing in or near a public square.

"'simply because a suspect has not yet fired a weapon does not mean that he will not do so in the future, particularly when intentionally keeping his gun with him.'") (quoting *Palacios*, 61 F.4th at 1259)); *Alcala v. Ortega*, 128 F.4th 1298, 1309 (10th Cir. 2025) ("Without Deputy Ortega's quick reaction, had Eguino-Alcala indeed been armed, he may well have beaten Deputy Ortega to the first shot. We cannot 'expect any human being to remain passive in the face of an active threat on his or her life.'") (quoting *Est. of Valverde*, 967 F.3d at 1064)).

In terms of distance, because Deweese was armed with a ranged weapon, this sub-factor similarly favors Defendants. *See Est. of Ceballos v. Husk*, 919 F.3d 1204, 1216 (10th Cir. 2019) (acknowledging that suspects armed with guns are "capable of harming someone from a much greater distance and with greater lethal potential" than non-ranged weapons). A photo of the incident immediately prior to the shooting [JA 27] also demonstrates that Defendants, in an effort to lawfully subdue Deweese, had advanced to within several feet of him, thereby pushing this sub-factor even further in their favor. *See Larsen*, 511 F.3d at 1260–61 (finding a 7 to 20-foot distance sufficient); *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 750 (10th Cir. 2021) (finding a 10 to 20-foot distance sufficient); *Palacios*, 61 F.4th 1248, 1260 (finding a 15 to 20-foot distance sufficient).

With respect to Deweese's manifest intentions, Deweese repeatedly disregarded commands and warnings over an extended period, intentionally misled

Defendants by lifting his shirt to show no weapon in his waistband while failing to disclose the gun in his pocket, threatened to shoot Jinx, and then pulled a gun as Defendants moved in to subdue him. From this, Defendants could reasonably conclude Deweese had no intention of surrendering peacefully and would remain hostile. *See Palacios*, 61 F.4th at 1260 (addressing similar facts, stating: "a reasonable officer in [defendants'] positions would conclude that Mr. Palacios made hostile gestures and manifested a hostile intent."); *Est. of Taylor*, 16 F.4th at 771 (same); *Lennen v. City of Casper, Wyoming*, No. 21-8040, 2022 WL 612799, at *8 (10th Cir. Mar. 2, 2022) (finding manifestly hostile intentions where suspect held non-ranged weapon in a way it could be quickly turned on officers, despite never raising or pointing the weapon toward officers); *Est. of George*, 85 F.4th at 1319 (finding manifestly hostile intentions where armed suspect's actions demonstrated an intent to evade and resist arrest); *Alcala*, 128 F.4th at 1312–13 (finding manifestly hostile intentions where suspect refused commands and merely "made motion reminiscent of drawing a gun.").

Lastly, as it relates to the Estate's arguments regarding Deweese's sobriety, the Complaint plainly alleges that after Deweese had consumed one eight-ounce beer, he was kicked out of the initial bar and prevented from entering any others. [JA 12–14, ¶¶ 27–39]. The Complaint is devoid of any factual averments plausibly indicating Deweese was drunk. Regardless, for purposes of this claim "the argument

36

that an officer should have realized a plaintiff could have been ... impaired is unconvincing because that possibility takes a back seat to the officers' legitimate fear that they were about to be shot." *Cruz*, 138 F.4th at 1268 (cleaned up).

Because it would have been entirely reasonable for Defendants to believe Deweese would remain hostile and pose an immediate safety threat, the balance of the *Larsen* sub-factors, and thus the second (and most dispositive) *Graham* factor, tips decisively in their favor.

### 3.    *Deweese continued to resist and evaded arrest.*

In addition to ignoring numerous commands over an extended period, when Defendants advanced on Deweese before opening fire, he "backed up" and "retreated in a defensive manner." [Complaint, ¶ 108]. He then pointed his gun at Jinx—manifesting an intent to defeat the very tool meant to effectuate his arrest. The Estate argues this factor cuts in its favor because these actions amounted to nothing more than "minimal, defensive movement." [Opening Brief, p. 35]. This argument is both groundless and irrelevant. *See, e.g.*, *Lennen*, 2022 WL 612799, at *9 (concluding this factor favored deadly force where suspect refused commands and manifested a hostile intent with a weapon); *Est. of Taylor*, 16 F.4th at 771–72 ("even if the officers misperceive plaintiff's defensive movements as aggressive, they are entitled to qualified immunity if the misperception is reasonable.") (cleaned up); *Alcala*, 128 F.4th at 1313 ("[E]ven if we were to assume [this factor] weighed against

37

Deputy Ortega, [plaintiffs] cannot overcome the strength of the second *Graham* factor.").

This factor, like the others, demonstrates objective reasonableness. Defendants are therefore entitled to qualified immunity.

## B.    No clearly established law prohibited deadly force under the alleged circumstances.

### 1.    *Legal background.*

Here again, to overcome Defendants' qualified immunity on its excessive deadly force claim, the Estate must show that the violative nature of their particular conduct was clearly established beyond debate (i.e., "so well defined that it is clear to a[ny] reasonable officer that his conduct was unlawful in the situation he confronted."). *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021).

### 2.    *Application.*

The Estate relies on the following materially distinguishable Tenth Circuit cases to make this showing:

- *Ibarra v. Lee*, which held that "[w]ithout a threat, weapon, or suspected crime, police officers couldn't reasonably believe that the Fourth Amendment would allow them to shoot [the suspect]." 135 F.4th 1257, 1264 (10th Cir. 2025);

- *Finch v. Rapp*, which held that "an officer, even when responding to a dangerous reported situation, may not shoot an unarmed and unthreatening suspect." 38 F.4th 1234, 1243 (10th Cir. 2022);

- *Pauly v. White*, finding excessive deadly force where officers arrived at the subject's home at night on suspicion of, "[a]t best," misdemeanors, failed to identify themselves before making threatening remarks about entering the home, and then shot the subject as he "aimlessly" pointed his gun out of the window—believing officers were home invaders. 874 F.3d 1197, 1215 (10th Cir. 2017);

- *Reavis Est. of Coale v. Frost*, finding clearly established violation where deputy used deadly force "to stop a fleeing vehicle when an objectively reasonable officer in [his] position could have perceived that any threat posed by [the] truck had abated before he fired." 967 F.3d 978, 992–94 (10th Cir. 2020);

- *Est. of Harmon v. Salt Lake City*, concluding that "[i]f [the suspect] hadn't brandished a knife or threatened the officers, the shooting would have violated a clearly established constitutional right." 134 F.4th 1119, 1129 (10th Cir. 2025);

- *Tenorio v. Pitzer*, denying qualified immunity where suspect "holding a small kitchen knife loosely by his thigh and ... made no threatening gestures toward anyone" was shot "before he was within striking distance of [the officer]." 802 F.3d 1160, 1164–65 (10th Cir. 2015);

- *Baca v. Cosper*, concluding "it is unreasonable for an officer to use deadly force where the officer had reason to believe that a suspect was only holding a knife, not a gun, and the suspect was not charging the officer and had made no slicing or stabbing motions toward him." 128 F.4th 1319, 1326 (10th Cir. 2025) (cleaned up);

- *Rosales v. Bradshaw*, denying qualified immunity to off-duty officer who pointed his weapon at a fellow motorist for no law enforcement reason, and motorist "kept his hands clear of his firearm," and "put his hands in the air while backing away from [the officer]." 72 F.4th 1145, 1153 (10th Cir. 2023) (cleaned up);

- *St. George v. City of Lakewood, Colorado*, finding excessive deadly force where police arrived at a home after midnight and failed to identify themselves, prompting the subject to arm himself and exit the home with a shotgun in the "low ready position" to investigate a suspected home invasion, before being shot by an officer. 2021 WL 3700918, at *7–8 (10th Cir. Aug. 20, 2021); and

- *Clerkley v. Holcomb*, finding clearly established excessive force where compliant, unarmed suspect was shot as he was surrendering to police, stating: "What unites these decisions addressing different types and degrees of potential danger is that in each case, as in this one, a reasonable officer would have recognized that the plaintiff was unarmed and nonthreatening." 121 F.4th 1359, 1364–67 (10th Cir. 2024).

Unlike the subjects in these cases, Deweese was not unarmed and he did not have a knife; he had a gun. Nor was this a situation where officers failed to identify themselves or provide commands and sufficient warnings. Here, Defendants stated who they were and pleaded with Deweese for over 20 minutes to surrender while holding him at gunpoint. None of these cases indicate, much less "clearly establish" that such conduct would fall short of an adequate pre-force warning. *Palacios*, 61 F.4th at 1259 (*supra*). Nor did Deweese hold a weapon by his side in a "low ready" position—he pulled a gun from his pocket as Defendants were moving in to arrest him, pointed it at Jinx, and started shooting. *See Est. of Valverde*, 967 F.3d at 1062 ("Perhaps a suspect is just pulling out a weapon [for a non-threatening or legitimate purpose]. But waiting to find out what the suspect planned to do with the weapon could be suicidal.").

These facts also show why the "obvious clarity" exception to clearly established law, *Sanchez v. Guzman*, 105 F.4th 1285, 1292–93 (10th Cir. 2024), would not apply. As discussed above, each of the relevant *Graham*/*Larsen* factors favor Defendants, not the Estate. This alone defeats the Estate's argument. *Compare Luethje v. Kyle*, 131 F.4th 1179, 1200 (10th Cir. 2025) (finding caselaw prohibiting excessive force applied with "obvious clarity" where *Graham* factors weighed clearly in the plaintiff's favor), *with Hodge v. Bartram*, 2023 WL 1462746, at *4 (10th Cir. Feb. 2, 2023) (declining to apply obvious clarity exception where "*Graham* factors d[id] not so decisively weigh in [the suspect's] favor as to place the unconstitutionality of [the officer's] conduct beyond debate.").

Lastly, regarding the Estate's reckless creation theory predicated on Jinx's deployment, the Estate has again failed to overcome the second prong of Defendants' qualified immunity. As previously addressed in Section II.C., the Estate's cited cases (involving K-9 deployments and other intermediate force) are materially distinguishable and do not clearly establish that releasing Jinx under the alleged facts was reckless. The Estate's remaining deadly force cases are equally inadequate. For instance:

- *Allen v. Muskogee* found reckless precipitating conduct where officers immediately ran screaming up to and attempted to disarm a suicidal suspect who was confined to his vehicle on a private driveway, and the entire incident unfolded over 90 seconds. 119 F.3d 837, 840–41 (10th Cir. 1997);

- *Est. of Ceballos v. Husk* found reckless precipitating conduct where officer rapidly approached and shot an emotionally distraught and potentially intoxicated suspect within one minute of arriving on scene, as the suspect was carrying a baseball bat on his own property. 919 F.3d 1204, 1216 (10th Cir. 2019);

- *Bond v. City of Tahlequah* found reckless precipitating conduct where officers cornered an intoxicated misdemeanant-trespasser in a private garage despite having no intention of arresting him, shot the initially unarmed suspect after he had picked up a hammer but had made no lunging or swinging motions toward the officers, and the entire event unfolded over 60 seconds. 981 F.3d 808, 823–25 (10th Cir. 2020); and

- *Pauly v. White* found reckless precipitating conduct where officers arrived at the subject's home at night on suspicion of misdemeanors, failed to identify themselves before making threatening remarks about entering the home, and then shot the subject as he "aimlessly" pointed his gun out of the window— believing officers were home invaders. 874 F.3d 1197, 1215 (10th Cir. 2017).

Again, these cases are nothing like what is alleged to have occurred here.

Deweese was not secluded on his own property, and he did not possess a non-ranged weapon like a bat or hammer—he was standing near a public square amidst at least one bystander while armed with a pistol. Nor would Defendants have had any reason to suspect Deweese was intoxicated or otherwise impaired, as nothing in the Complaint plausibly indicates such information was relayed to them by dispatch, or that Deweese had exhibited any such symptoms during the encounter. Also, unlike the Estate's various example cases, Defendants clearly identified themselves, provided multiple warnings and orders, and did not resort to force within seconds of arriving on scene. Here, despite having 20 minutes to comply with lawful orders and

42

surrender peacefully, Deweese remained noncompliant and, as alleged, even made threats. "Suffice it to say, a reasonable officer could miss the connection between [the Estate's cited cases] and this one." *Bond*, 595 U.S. at 14.

## CONCLUSION

For the reasons set out above, Defendants ask this Court to affirm the District Court's judgment in their favor.

RESPECTFULLY SUBMITTED this 2nd day of October 2025.

*/s/ Eric M Ziporin*
**Eric M. Ziporin**
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO  80210
Telephone: (303) 320-0509

*/s/ Jonathan N. Eddy*
**Jonathan N. Eddy**
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO  80210
Telephone: (303) 320-0509
*Attorneys for Appellees Hoover and Schuelke*

*/s/ Bryan E. Schmid*
**Bryan E. Schmid**
Senior County Attorney
El Paso County Attorney's Office
200 South Cascade Avenue, Suite 150
Colorado Springs, CO 80903
Telephone: (719) 520-6485

*/s/ Steven W. Martyn*
**Steven W. Martyn**
Senior County Attorney
El Paso County Attorney's Office
200 South Cascade Avenue, Suite 150
Colorado Springs, CO 80903
Telephone: (719) 520-6485
*Attorneys for Appellees Hancock and LeBaron*

## <u>STATEMENT OF THE REASONS WHY ORAL ARGUMENT IS NECESSARY</u>

Defendants believe oral argument may be necessary to address any questions the Court may have and/or any issue the Court may deem appropriate to raise.

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS</u>

1.     This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 10th Cir. R. 32(a) because: this brief contains 11,731 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft® Word in size 14 Times New Roman font.

Dated:      October 2, 2025

*/s/ Eric M. Ziporin*
Eric M. Ziporin

*/s/ Jonathan N. Eddy*
Jonathan N. Eddy
*Attorneys for Appellees Hoover and Schuelke*

*/s/ Bryan E. Schmid*
Bryan E. Schmid

*/s/ Steven W. Martyn*
Steven W. Martyn
*Attorneys for Appellees Hancock and LeBaron*

## <u>CERTIFICATE OF COMPLIANCE WITH ELECTRONIC SUBMISSION REQUIREMENTS</u>

1.    All required privacy redactions have been made in compliance with 10th Cir. R. 25.5.

2.    Any hard copies of this brief to be submitted to the court will be exact copies of the version submitted electronically.

3.    The electronic submission has been scanned for viruses using Cortex XDR Advancement Endpoint Protection, which was updated June 5, 2025. According to that program, this e-submission is free of viruses.

Dated:    October 2, 2025

*/s/ Meleah M. Williams*
Legal Operations Manager

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 2nd day of October 2025, a true and correct copy of the above and foregoing **APPELLEES' JOINT ANSWER BRIEF** was electronically filed with the Court and served upon all counsel via electronic filing:

Raymond K. Bryant
Ed Hopkins
Zachary L. Shiffler
Civil Rights Litigation Group
1543 Champa Street, Suite 400
Denver, CO 80202
raymond@rightslitigation.com
ed@rightslitigation.com
zach@rightslitigation.com
*Attorneys for Plaintiff Estate of Wilford Deweese*

Eric M. Ziporin
Jonathan N. Eddy
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO 80210
Telephone: (303) 320-0509
eziporin@sgrllc.com
jeddy@sgrllc.com
*Attorneys for Appellees Hoover and Schuelke*

*/s/ Meleah M. Williams*
Legal Operations Manager

46