**Case No. 25-1161**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

------------------------------------------------------------------------------------

**ESTATE OF WILFORD DEWEESE,**
*Plaintiff-Appellant*,

**v.**

**RONNIE HANCOCK, DANIEL LEBARON, LEVI HOOVER, and
JEFFREY SCHUELKE**
*Defendant-Appellees.*

On Appeal from the United States District Court
For the District of Colorado
The Honorable Judge Daniel Domenico
District Court Civ. Action No. 1:24-CV-00960-DDD-NRN

**APPELLANT'S REPLY BRIEF**

Respectfully submitted,

CIVIL RIGHTS LITIGATION GROUP, LLP

Raymond K. Bryant
Attorney for Plaintiff-Appellant
Estate of Wilford Deweese
1543 Champa St., Ste. 400
Denver, CO 80202
raymond@rightslitigation.com
(720) 515-6165

November 6, 2025

**ORAL ARGUMENT IS REQUESTED**

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES........................................................ iv

INTRODUCTION ...................................................................... 1

ARGUMENT ............................................................................ 3

I.   Rule 12(b)(6): de novo review and plaintiff-side inferences support the pleaded constitutional violations and defeat qualified immunity at this stage. ............................................................................. 3

II.  Intermediate force: on the pleaded facts, the K-9 deployment was unconstitutional under *Graham* and this Court's precedents. ............ 6

    a.   Intermediate force: Severity of the crime................................. 6

    b.   Intermediate force: Immediate threat...................................... 9

    c.   Intermediate force: Active resistance to arrest. ...................... 11

    d.   Intermediate force: Appellees' broader position fails. ............ 13

    e.   Whether the dog completed a bite does not change the analysis. 15

    f.   Intermediate force: clearly established law............................. 16

III. Deadly force: there was no immediate human threat and warnings were feasible........................................................................ 21

    a.   The pleaded facts describe self-defense against a charging dog, not a threat to officers. .......................................................... 22

    b.   The Larsen sub-factors favor the Estate................................. 23

    c.   Efforts to Distinguish Clearly Established Law Fail ............... 25

IV.  Reckless creation: the coordinated escalation unreasonably created the need to use deadly force and was clearly established ................. 26

CERTIFICATE OF COMPLIANCE ......................................... 32

CERTIFICATES OF DIGITAL SUBMISSION.......................... 33

ii

CERTIFICATE OF SERVICE ..................................................................34

# TABLE OF AUTHORITIES

## Constitutional Provisions

U.S. Const. amend. II .................................................................................. 7, 17

U.S. Const. amend. IV ............................................................................. 15, 16, 27

## Cases

*Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997) ............................ 2, 4, 5, 27

*Anderson v. DelCore*, 79 F.4th 1153 (10th Cir. 2023) .................................. 13

*Arnold v. City of Olathe*, 35 F.4th 778 (10th Cir. 2022) ...................... 2, 5, 29

*Baca v. Cosper,* 128 F.4th 1319 (10th Cir. 2025) ......................................... 26

*Barnes v. Felix*, 605 U.S. 73 (2025) ...................................................... 5, 23

*Bond v. City of Tahlequah,* 981 F.3d 808 (10th Cir. 2020) ................. 28, 30

*Buck v. Albuquerque,* 549 F.3d 1269 (10th Cir. 2008) .................... 16, 17, 18

*C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270 (10th Cir. 2022) ..................... 4

*Casey v. City of Federal Heights*, 509 F.3d 1278, 1282 (10th Cir. 2007) .. 10, 13, 16, 17, 19

*Cavanaugh v. Woods*, 625 F.3d 661, 665 (10th Cir. 2010) ... 10, 16, 17, 18, 25

*City of Tahlequah v. Bond*, 595 U.S. 9 (2021) .............................................. 28

*Cooper v. Sheehan,* 753 F.3d 153 (4th Cir. 2013) ........................................ 23

*Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007) ...................... 3, 6, 8, 14

*Davis v. Clifford*, 825 F.3d 1131 (10th Cir. 2016) ........................ 12, 17, 18, 19

*District of Columbia v. Heller,* 554 U.S. 570, (2008) ................................. 29

*Emmett v. Armstrong*, 973 F.3d 1127 (10th Cir. 2020) ............................... 15

*Est. of Ceballos v. Husk*, 919 F.3d 1204 (10th Cir. 2019) ......... 2, 5, 25, 27, 28

*Est. of Taylor v. Salt Lake City*, 16 F.4th 744 (10th Cir. 2021) ... 7, 28, 29, 30

*Est. of Thakuri v. City of Westminster*, 19-CV-02412-DDD-KAS, 2024 WL

   1152565 (D. Colo. Mar. 14, 2024) ............................................................. 29

*Est. of Larsen v. Murr*, 511 F.3d 1255 (10th Cir. 2008) ............................... 21

*Finch v. Rapp,* 38 F.4th 1234 (10th Cir. 2022) ................................. 2, 22, 26

*Fisher v. City of Las Cruces,* 584 F.3d 888 (10th Cir. 2009) ....................... 15

*Flores v. Henderson*, 101 F.4th 1185 (10th Cir. 2024) .............. 2, 7, 8, 26, 30

*George v. Morris,* 736 F.3d 829 (9th Cir. 2013) .......................................... 23

*Graham v. Connor*, 490 U.S. 386 (1989) ............. 1, 6, 11, 13, 14, 15, 16, 18, 21

*Gutierrez v. Hackett*, 131 F. App'x 621 (10th Cir. 2005) ............................. 14

*Halley v. Huckaby,* 902 F.3d 1136 (10th Cir. 2018) ................................... 27

*Helvie v. Jenkins,* 66 F.4th 1227 (10th Cir. 2023) ...................................... 13

*Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179 (10th Cir. 2001) . 15,

   16

*Hooks v. Atoki*, 983 F.3d 1193 (10th Cir. 2020) ........................................ 3, 4

*Hope v. Pelzer,* 536 U.S. 730 (2002) .......................................................... 27

*Jordan v. Jenkins,* 73 F.4th 1162, (10th Cir. 2023)..................................... 19

*Kay v. Bemis*, 500 F.3d 1214 (10th Cir. 2007) ............................................... 4

*Krueger v. Phillips*, --F.4th--, 2025 WL 2424209 (10th Cir. Aug. 22, 2025)

..................................................................................................... 11, 12

*Lowe v. Raemisch*, 864 F.3d 1205 (10th Cir. 2017) .................................... 26

*Luethje v. Kyle*, 131 F.4th 1179 (10th Cir. 2025).... 2, 4, 6, 7, 16, 17, 18, 19, 21,
26

*Martin v. Board of Cty Com'rs of Pueblo,* 909 F.2d 402 (10th Cir. 1990) ..15

*McCowan v. Morales,* 945 F.3d 1276 (10th Cir. 2019) ....................19, 20, 27

*McWilliams v. Dinapoli*, 40 F.4th 1118 (10th Cir. 2022)........... 12, 13, 15, 20

*Mecham v.* Frazier, 500 F.3d 1200 (10th Cir. 2007) ................................... 13

*Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012)......................... 6, 16, 17, 18, 19

*Moya v. City of Clovis*, 829 F. App'x 346 (10th Cir. 2020)..........................15

*Mundt v. Gadziala*, No. 24-1041, 2024 WL 5087212 (10th Cir. 2024 Dec.
12, 2024).................................................................................................... 3

*Myers v. Brewer,* 773 Fed. App'x 1032 (10th Cir. 2019)............................... 7

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) ....... 29

*Oliver v. Woods*, 209 F.3d 1179 (10th Cir. 2000) ......................................... 8

*Palacios v. Fortuna*, 61 F.4th 1248 (10th Cir. 2023) ................................. 25

*Pauly v. White,* 874 F.3d 1197 (10th Cir. 2017) 2, 5, 21, 22, 23, 25, 26, 28, 29

*Rosales v. Bradshaw,* 72 F.4th 1145 (10th Cir. 2023)......................17, 23, 29

*See Est. of Smart v. City of Wichita*, 951 F.3d 1161, 1171 (10th Cir. 2020) ...9

*Shepherd v. Robbins*, 55 F.4th 810 (10th Cir. 2022) ................................... 26

*St. George v. City of Lakewood,* 2021 WL 3700918 (10th Cir. 2021).... 17, 21,
    23, 28, 29

*Surat v. Klamser*, 52 F.4th 1261 (10th Cir. 2022)....................................... 12

*Tennessee v. Garner*, 471 U.S. 1 (1985)..................................................... 21

*Thomas v. Kaven*, 756 F.3d 1183 (10th Cir. 2014) ........................................3

*Thomson v. Salt Lake City*, 584 F.3d 1304 (10th Cir. 2009) ................ 14, 15

*U.S. v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015).....................................9

*Vette v. K-9 Deputy Sanders,* 989 F.3d 1154 (10th Cir. 2021)... 2, 6, 7, 11, 15,
    16, 18, 21

## Statutes

C.R.S. § 18-1-704 .................................................................................. 9, 24

C.R.S. § 18-3-206 ........................................................................................8

C.R.S. § 18-9-202 .................................................................................. 9, 24

## State Cases

*People v. Fuller*, 781 P.2d 647 (Colo. 1989) ........................................... 9, 24

## **INTRODUCTION**

The opening brief explains that the district court misapplied the Rule 12(b)(6) standard, conflated excessive force doctrines, and overlooked controlling precedent showing that the officers violated clearly established law. Appellees' arguments rest on defense-leaning inferences and a cramped reading of *Graham* while ignoring the central point: on the pleaded facts, there was no legitimate justification for the force decisions at issue.

This was not a split second, rapidly evolving confrontation. From a distance, officers encountered a still, non-threatening, sixty-seven-year-old assault victim who was on the phone seeking legal advice, standing in an unfamiliar place while officers pointed guns at him. J.A. 11, 12, 18. The Complaint alleges no threat, flight, or resistance; he remained peaceful, stationary, and communicative. J.A. 17, 19, 20. The Complaint further alleges that officers had distance, time, and cover; that they described the situation as under control and said they could wait; and that they were told a canine deployment would prompt Mr. Deweese to defend himself. J.A. 20, 23, 24. The Complaint alleges that when officers released the dog, Mr. Deweese pointed his gun low and away from officers and toward the charging canine, perfectly consistent with his prior warning that he would defend himself against the animal and that he did not threaten any person. J.A. 23, 26–27.

Accepting the well-pleaded allegations and drawing reasonable inferences for the Estate, the Complaint plausibly alleges clearly established violations at three junctures. First, officers deployed a biting dog without objective facts showing an immediate threat or active resistance—significant force this Court treats as constitutionally constrained. *Luethje v. Kyle*, 131 F.4th 1179, 1198-2000 (10th Cir. 2025); *Vette v. K-9 Deputy Sanders,* 989 F.3d 1154, 1169-74 (10th Cir. 2021). Second, officers fired when a jury could find that reasonable officers would have understood that Mr. Deweese's self-protective actions toward the dog did not threaten any human. *Pauly v. White,* 874 F.3d 1197, 1221 (10th Cir. 2017); *Finch v. Rapp,* 38 F.4th 1234, 1243 (10th Cir. 2022). Third, the coordinated rush of overwhelming force unreasonably escalated the incident and recklessly created the need to use deadly force, like police onslaughts long recognized as unconstitutional in this Circuit. *Allen v. Muskogee*, 119 F.3d 837, 837 (10th Cir. 1997); *Pauly, at 1212*; *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1216-17 (10th Cir. 2019); *Arnold v. City of Olathe*, 35 F.4th 778, 789–90 (10th Cir. 2022); *Flores v. Henderson*, 101 F.4th 1185, 1194–99 (10th Cir. 2024).

On *de novo* review, the Court should reverse the Rule 12(b)(6) qualified immunity dismissal and remand the canine force, deadly force, and related failure to intervene and conspiracy claims for further proceedings.

## ARGUMENT

**I.    Rule 12(b)(6): *de novo* review and plaintiff-side inferences[1] support the pleaded constitutional violations and defeat qualified immunity at this stage.**

Appellees inaccurately parse *Mundt* to suggest the motion-to-dismiss standard permits defense-leaning fact selection and inferences. Appellee Answer at 8–12. It does not. As controlling law dictates, "[w]e must accept all well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Mundt v. Gadziala*, No. 24-1041, 2024 WL 5087212, at *4 (10th Cir. 2024 Dec. 12, 2024) (citing *Thomas v. Kaven*, 756 F.3d 1183, 1190 (10th Cir. 2014)). This standard bars weighing evidence, adopting defense narratives, or drawing inferences against the plaintiff at the pleading stage. *See Hooks v. Atoki*, 983 F.3d 1193, 1197, 1201 (10th Cir. 2020).

Courts, therefore, may not credit defense characterizations over pleaded facts and must draw reasonable inferences for the plaintiff. *Mundt*, 2024 WL 5087212 at *5; *Hooks*, 983 F.3d at 1197, 1201. The court must draw "any reasonable inferences that might be drawn... in a light most favorable

---

[1] *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007) ("We take Plaintiffs' allegations as true and view the evidence in the light most favorable to them.")

to the plaintiff." *Hooks*, 983 F.3d at 1197 (quoting *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007)). This principle bars courts from "drawing inferences against the plaintiff." *See, e.g. C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1281 n.10 (10th Cir. 2022); *Luethje,* 131 F.4th at 1185 n.2 (declining to credit defense facts because "to assume otherwise would improperly go beyond the allegations and require making inferences in the deputies' favor.").

Appellees' defense of the district court's approach misses the standard. The court drew inferences of sobriety contrary to the Complaint's allegations, an error at the pleading stage. Any ambiguity about impairment must be resolved in the plaintiff's favor for purposes of Rule 12(b)(6). [2] These defense-leaning inferences led the court to over distinguish key precedents and to dismiss claims prematurely and "on technical deficiencies"—precisely what the law is meant to guard against. *See* 5B Fed. Prac. & Proc. Civ. § 1357 (4th ed.).

Appellees also rely on a temporal gap theory to defend the district court's distinguishing of *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997),

---

[2] Facts including the consumption of at least one beer, time spent at bars, a bar patron 911 call, and Lebaron's knowledge from the bar all favor an inference of impairment or intoxication, if necessary. J.A. 27-29, 40-49, 71. If material and insufficient, the complaint can be amended to include dispatch characterizing him as "intoxicated."

but they fail to address the error of that second additional wedge: the misapplication of *Allen*'s temporal proximity analysis. *See* Opening Brief at 51. The reckless incitement framework asks whether an officer's reckless actions were close enough in time to be "immediately connected" to the subject's self-defensive response. *Allen,* 119 F.3d at 841. The focus is not the length of the entire incident, but on the time between the officers' precipitating action and the fatal confrontation, asking whether it is close-enough to be considered in the reasonableness analysis. *See Arnold*, 35 F.4th at 790; *Est. of Ceballos*, 919 F.3d at 1216. The Supreme Court has recently endorsed an even broader temporal scope of relevancy, making clear "the totality of the circumstances inquiry has no time limit." *See Barnes v. Felix*, 605 U.S. 73, 80 (2025). Here, the time between the canine threat and the lunge was short—seconds to a couple of minutes—comparable to the compressed sequences in *Allen* and *Pauly*. See *Allen*, 119 F.3d at 840–41 (90 seconds); *Pauly*, 874 F.3d at 1205 (five minutes).

Appellees' characterizations that Mr. Deweese was ordered to surrender, was under arrest, and refused commands for twenty minutes conflict with the Complaint, which alleges at least partial compliance, no statement that he was under arrest, and photos showing hands up. J.A. 17–20. The Complaint alleges he raised his shirt to comply with requests, not to

mislead. J.A. 20 ¶¶ 65–66. At this stage, disputed inferences go to the plaintiff.

## II. Intermediate force: on the pleaded facts, the K-9 deployment was unconstitutional under *Graham* and this Court's precedents.

After roughly twenty minutes of stasis, with officers asserting control and deescalating options available, *Graham* and this Court's cases do not permit unleashing a biting dog on a stationary, non-threatening person. *Luethje,* 131 F.4th at 1198-1200. This was clearly established in February 2022, three months before the incident here. *Id.* at 1199. Even if this Court concluded that vague suspicion under the first *Graham* factor favored the officers (it should not), the overwhelming weight of the second two factors makes clear that significant force was unconstitutional. *See id., Vette*, 989 F.3d at 1169–71; *Morris v. Noe*, 672 F.3d 1185, 1195–96 (10th Cir. 2012). No objective facts make the canine attack "reasonably necessary" to effect a lawful detention under the circumstances. *Cortez,* 478 F.3d at 1126 (analyzing force in context of the type of encounter, arrest or investigative detention).

### a. *Intermediate force: Severity of the crime.*

Appellees' felony-only framing omits that the alleged "gun flashing" could indicate a misdemeanor, a felony, or no crime at all, depending on context. *See Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 763–64 (10th Cir.

2021). Appellees' attempt to parse the conclusion of *Taylor* does not address the same consistent determination reached by this Court in *Myers v. Brewer,* 773 Fed. App'x 1032, 1037 (10th Cir. 2019). Nor does it address the broader principle flowing through each that officers must collect more information before reasonably concluding a felony is at issue. Particularly given the strength of the Second Amendment right to carry and use firearms to defend oneself (Opening Brief at 21, 50), such facts do not necessarily justify arrest or significant force. *Id.*

A biting dog deployment is significant force that risks serious injury. *See Vette*, 989 F.3d at 1169–71. Such force demands objective justification beyond mere suspicion. *Id.* A bare 911 report does not end the inquiry; officers must gather objective facts before employing significant force. *See id.*; *Luethje,* 131 F.4th at 1194-95.

Appellees' reliance on cases involving emergent movements toward a waistband is misplaced. Here, the Complaint alleges Mr. Deweese was stationary and visible, with no threatening movement. Appellee's citation to *Flores* for the notion that police officers facing a report of someone "flashing a gun" are not obliged to "forego an investigation," only reinforces that officers needed *more* investigation before concluding a serious crime occurred or taking forceful action. Their indeterminate information and

failure to indicate Deweese was under arrest placed them in an investigative detention, where officers should preserve the status quo to ask questions for the purpose of dispelling suspicion. *Cortez,* 478 F.3d at 1123, 1130; *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). Unlike in *Flores*, where the subject responded to a police stop by "reach[ing] into his waistband as if to draw a gun," Mr. Deweese did not. The officers had Deweese stopped and stationary without threat and needed no force to quell an emerging danger. Instead of taking the opportunity to query, the officers declined dialogue (J.A. 17 at ⁋ 57). This left them without evidence of a serious crime or the probable cause.

Appellees suggest the Complaint lacks allegations the officers knew Mr. Deweese acted in self-defense earlier, but they overlook Deweese's statements (J.A. 17 at ⁋ 67) and information Lebaron collected while Hoover and Schuelke told him to stop by the bar while the situation was under control (J.A. 20 at ⁋ 70–71). Viewed in a light most favorable to the Estate, the reasonable inference is that Lebaron obtained facts supporting self-defense or that no crime was committed, including that the gun Deweese "flashed" had caught on Deweese's pocket and was not drawn, brandished, or pointed to place anyone "in fear of imminent bodily injury." *Compare* J.A. 14 at ⁋ 43–50 *with* C.R.S. § 18-3-206.

Appellees' suggestion that Mr. Deweese committed menacing by warning he would defend himself against a dog attack ignores the pleaded context: his statement was a conditional notice of intent to exercise lawful self-defense, if necessary, and was directed at an animal, after officers threatened a canine bite. J.A. 23 ¶ 87. It was not a "threat of violence" against officers. *See U.S. v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015). It was not a threat to any person, given his twenty minutes of non-threatening conduct and his right to self-defense. *See* C.R.S. § 18-1-704 (self-defense justified); C.R.S. § 18-9-202(II)(2.5)(b) (physical force on a police animal is justified when it applies excessive force); *See also People v. Fuller*, 781 P.2d 647, 650 (Colo. 1989) ("self-defense is permissible when unreasonable or excessive force accompanies either lawful or unlawful arrests.").

### b. *Intermediate force: Immediate threat.*

The Complaint alleges no immediate human threat when the dog was dispatched. A mistaken threat perception must be objectively reasonable. *See Est. of Smart v. City of Wichita*, 951 F.3d 1161, 1171 (10th Cir. 2020).

The five facts Appellees recite are grasping at straws. *See* Answer at 19. (1) First, an earlier "threat to use a firearm" is irrelevant to the second prong, it occurred pre-contact, was not toward police, and was belied by twenty minutes of peaceful stasis. *See also, supra.* (2) Mr. Deweese's warning that

he would shoot the canine was qualified as necessary for self-defense and was a contextual response to officers' initial threat. *See* above. (3) Deweese's purported "refusal to follow commands" does not connote threatening conduct; a passive failure to abide by some commands does not signal a "refusal" or an "objective willingness" to resist or to endanger officers, particularly when Deweese attempted to communicate and follow commands conveyed for the express purpose of officer safety (J.A. 17-20, ¶¶ 55, 61-67). *See infra.* (4) Confinement limited any possible danger, making him "easier to capture, not harder." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1282 (10th Cir. 2007) (by remaining stationary, the suspect "made himself easier to capture, not harder."); *See also Cavanaugh v. Woods*, 625 F.3d 661, 665 (10th Cir. 2010) (no resisting where subject was not told she was under arrest and *did not prevent officer from walking over and placing her under arrest*) (emphasis added). (5) Being near a cordoned-off public square risked no civilians, as police had contained the scene and blocked all exits; there was no one in immediate risk of danger. No threats of unprovoked violence existed except those by police.

Speculation about bystander danger is inconsistent with the Complaint photographs, which show no civilians near Mr. Deweese. *See* J.A. at 16, 17, 18, 19, 21, 23, 27. The claim that the video witness was in danger is

exaggerated, as the recorder's vantage point in the photos was clearly across the street, and high up in a multi-story building, where there was no threat from a stationary man held at gunpoint—certainly no threat the police could have been aware of at the time. *Id.*

The Complaint shows this sixty-seven-year-old man remained largely still, harmless, and non-threatening until the canine was released. J.A. ¶¶ 64-66, 79, 85-90. Viewing him as immediately threatening at any point before the attack would be unreasonable. Immediate threat is the most important *Graham* factor; it weighs heavily against deploying a biting dog. *See Vette*, 989 F.3d at 1170.

### c. *Intermediate force: Active resistance to arrest.*

Appellees argue Deweese "refused" to follow commands for twenty minutes but identify no conduct that elevated passive noncompliance to affirmative refusal. The Complaint alleges Deweese responded to multiple requests when not offering information or seeking counsel on the telephone. Regardless of full compliance, the third *Graham* factor asks whether a suspect "actively resists arrest." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The qualifier "active" and the phrase "to arrest" are essential to justify force under precedent. *See Krueger v. Phillips*, --F.4th--, 2025 WL 2424209, at *19, 20 (10th Cir. Aug. 22, 2025).

This Court distinguishes passive noncompliance from active resistance. *See id.*; *McWilliams v. Dinapoli*, 40 F.4th 1118, 1127–29 (10th Cir. 2022) ("[n]oncompliance and arguing do not amount to active resistance."); *Surat v. Klamser*, 52 F.4th 1261, 1275 (10th Cir. 2022). The Estate has cited numerous cases from this Circuit to illustrate "active resistance" does not include mere passive failures or disobedience. *See* Opening Brief at 25. Instead of grappling with the concept, Appellees' attempt to distinguish such cases on detailed facts. But none of those distinctions addresses the broader controlling principle that consistently runs through them.

The Complaint alleges Mr. Deweese followed multiple safety-related requests but was afraid to walk 30 yards toward officers pointing firearms. J.A. 17–20 ¶¶ 55, 61–67, 84–85. That is tantamount to the fear-driven failure-to-comply excused in *Davis v. Clifford*, 825 F.3d 1131 (10th Cir. 2016), where conduct did not constitute active resistance, even though the subject "did not immediately obey the officers' orders." *Id.* at 136. Officers must anticipate that ordinary people, lacking regular police contact, may experience significant fear from such displays of force.

Finally, "active resistance to arrest" requires that a person know they are under arrest before they can be held responsible for resisting one. *McWilliams,* 40 F.4th at 1127 (subject "couldn't have been resisting an arrest

12

if he hadn't even been told that he was being arrested."). The Complaint allegations do not support that Deweese was told or otherwise knew he was under arrest.

### d. *Intermediate force: Appellees' broader position fails.*

Appellees suggest that significant force may be used whenever a subject fails to follow commands. *See* Appellee Answer at 20. That view is inconsistent with this Court's treatment of passive noncompliance under *Graham* and its progeny. The situation in *Anderson v. DelCore* involved a unique evidentiary exigency. 79 F.4th 1153, 1165 (10th Cir. 2023).[3] That unique factor is not only missing from the situation here, but also from most excessive force examples that serve as precedent for this case. Any statement that "resistance need not be physical" must be confined to the narrow contexts in which it arose and cannot displace the requirement of active resistance. *See McWilliams*, 40 F.4th at 1127–29; *Casey*, 509 F.3d at 1281–85. It cannot be viewed to authorize significant force based on mere inactivity or passive failure. *See* Section II(c), *supra*.

---

[3] *Delcore* cited two other cases, *Helvie v. Jenkins* and *Mecham v. Frazier* in support of the proposition that "officers must be able to employ force to enforce their lawful orders...." But those two cases involved (a) additional authority to order a driver out of a car for officer safety followed by active refusal (66 F.4th 1227, 1237 (10th Cir. 2023)), and (b) dangerous exigencies while officers stopped on busy highways (for 50 minutes) and could have been injured by passing vehicles (500 F.3d 1200, 1205 (10th Cir. 2007)).

Appellees also repeatedly claim that their command for Deweese to walk 30 yards toward them was "lawful," but attempt no substantive argument as to why they perceive such lawfulness in light of Appellant's citations from this Court and the Supreme Court identifying that investigatory detentions provide only limited authority to maintain the status quo; authority which does not include the authority to compel a suspect to move "more than a short distance." *See* Opening Brief at 29-30; *Cortez,* 478 F.3d at 1126 (force is less justified to effect detention than arrest).

The cases Appellees cite involve materially different facts, typically involving flight, concealment, or active danger. *See Thomson v. Salt Lake City*, 584 F.3d 1304, 1317–20 (10th Cir. 2009). By contrast, the Complaint here alleges a stationary, contained, and visible person. *Graham* governs whether canine force is justified. *See id.* There is no need to chase or locate someone with bite force that remained visible standing in front of officers. *Gutierrez v. Hackett* does not assist Appellees, as it points to a post-trial review of the sufficiency of evidence for a jury verdict in favor of one of two officers who participated in canine force, which omits that the disputed facts were sufficient to decline summary judgment earlier. 131 F. App'x 621, 623-24 (10th Cir. 2005). *Moya v. City of Clovis* also does not support Appellees, as the canine force was approved to pursue a subject fleeing on rooftops, and

14

the court did not inquire further because the appellant did not identify district court error in finding that sufficient. 829 F. App'x 346, 349-50 (10th Cir. 2020). *Thomson* provides notice to officers that courts in this circuit will analyze a canine deployment for reasonableness not only based on *Graham*, but on the reckless incitement standard. 584 F.3d at 1320.

### e. Whether the dog completed a bite does not change the analysis.

Appellees suggest Deweese was not bitten and that the lack of completed seizure is distinguishing. Answer at 29. A bite likely occurred but was overshadowed by bullets. J.A. 1111-123. Regardless, it is not necessary to the analysis because proof of physical contact is not an essential element of an excessive force claim. *Martin v. Board of Cty Com'rs of Pueblo,* 909 F.2d 402 (10th Cir. 1990); *McWilliams,* 40 F.4th at 1129. Officers may be held liable when they act in a manner that "creates a serious known risk of trauma," even if they do not personally inflict it. *Fisher v. City of Las Cruces,* 584 F.3d 888, 901 (10th Cir. 2009); *see also Buck v. Albuquerque,* 549 F.3d 1269, 1279-80 (10th Cir. 2008) (liability attaches where a "defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."). Even the deployment of a SWAT team or the pointing of firearms may amount to excessive force if it is not predicated on sufficient evidence of

danger to the officers at the time. *Holland,* 268 F.3d at 1190, 1192. The Fourth Amendment inquiry evaluates objective justification at the moment force is deployed. *See Vette*, 989 F.3d at 1169; *Emmett v. Armstrong*, 973 F.3d 1127, 1136 (10th Cir. 2020). The deployed dog and the officers' coordinated approach should be assessed like any other significant force decision under *Graham. See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187–95 (10th Cir. 2001).

  *f.* <u>*Intermediate force: clearly established law.*</u>

  Several of this Court's decisions gave fair notice that using intermediate force on a non-threatening, non-resisting person violates the Fourth Amendment. *See Vette*, 989 F.3d at 1169–74; *Casey*, 509 F.3d at 1281–85; *Morris*, 672 F.3d at 1195–96; *Cavanaugh*, 625 F.3d at 665–66. This case is much like *Luethje*, where officers suspected a burglary but did not see anyone threatening, fleeing, or resisting arrest, but deployed a canine to find and bite anyway. *Luethje,* 131 F.4th at 1198. This Court found "a reasonable officer would have known in February of 2022 that using a police canine to bite and restrain a non-violent, non-resisting suspect was unconstitutional." *Id*. The court came to this conclusion after surveying several of the cases above and finding a lack of justification under the second two *Graham* factors. "When an officer's violation of the Fourth Amendment

is particularly clear from *Graham* itself, we do not require a second decision with greater specificity." *Davis*, 825 F.3d at 1136. The same analysis applies here.

Appellees argue the precedent identified by Appellant is distinguishable and failed to put them on notice. But they identify few distinctions between the violative conduct here and that of officers in *Luethje*, *Davis*, *Morris*, *Cavanaugh*, *Buck*, and *Casey*. *See* Opening Brief at 29. None of the distinctions raised are material.

First, Appellees assert that a distinguishing variable is that Mr. Deweese was "armed." However, he did not brandish or remove the pistol from his pocket until *after* the canine deployment, making its hidden presence irrelevant to the officers' initial force decision. The Second Amendment protects the right to possess a firearm. Deweese should not be punished for being a lawful gun carrier. This Court has made clear that the perceived presence of a weapon is immaterial without hostile movements toward police with that weapon. *Cavanaugh,* 625 F.3d at 665–66 (knife); *Rosales v. Bradshaw,* 72 F.4th 1145, 1153 (10th Cir. 2023) (discussing a gun); *St. George v. City of Lakewood,* 2021 WL 3700918, at *7 (10th Cir. 2021) (discussing a gun). The same is true here.

Second, Appellees assert Deweese was wanted for a felony (a claim contradicted by Section II(a)). Regardless, *Luethje*, *Vette*, and *Morris* all involved felonies or serious suspected crimes where the first *Graham* factor favored officers. *See Luethje*, 131 F.4th at 1197 (reviewing *Vette* and *Morris*). Yet, in each case, the force was clearly established as unconstitutional because the second two *Graham* factors provided no justification. *Id.* The most severe form of intermediate force—a canine bite, which uniquely risks serious bodily injury—was clearly established as excessive without objective facts of a threat or active resistance. That same analysis applies here.

Third, contrary to Appellee's contentions, several of the subjects in the comparable cases cited were alleged to be noncompliant. *See Vette,* 989 F.3d at 1171 (subject initially fled from arrest, but stopped the force); *Davis,* 825 F.3d at 1136 (subject refused to exit car and instead rolled up windows); *Cavanaugh,* 625 F.3d at 663 (subject veered off walkway and cut across the law as the officer approached her); *Buck,* 549 F.3d at 1286, 1289 (subjects chanted "shame" and posed questions in the face of commands, refused to clear the streets, and laid on the ground). But the Court in each found such allegations did not rise to the level of active resistance or flight, as required by *Graham* to justify force. The same is true here.

Fourth, although *Luethje*, *Morris*, and *Casey* involved a lack of warning of the impending force before it was used, that fact was not central to the precedential holdings of excessive force. It only made excessive force, "especially troubling." *Casey,* 509 F.3d at 1285. *Casey* made expressly clear that intermediate force—there a Taser—violated clearly established law because none of the three *Graham* factors supported it, and, as a result, there were "no substantial grounds for a reasonable officer to conclude that there was legitimate justification." *Id.* at 1136. The precedential value of *Casey* in subsequent force cases has been that "it was unreasonable for an officer to use force against a non-violent misdemeanant suspect who was not resisting, fleeing, or dangerous." *McCowan v. Morales,* 945 F.3d 1276, 1288 (10th Cir. 2019). The same is true when this Court has applied *Morris*. It "establishes that a takedown maneuver is unconstitutional when an arrestee poses no threat, puts up no resistance, and does not attempt to flee." *Jordan v. Jenkins,* 73 F.4th 1162, 1174 (10th Cir. 2023); *see also Davis*, 825 F.3d at 1137 ("it is, and was at the time of Davis' arrest, clearly established law that the use of disproportionate force to arrest an individual who has not committed a serious crime and who poses no threat to herself or others constitutes excessive force").

To the extent this Court further considers whether a warning is relevant, its import is not just to give advance notice of incoming police force, but to provide meaningful notice to a subject that they are *under arrest* and must allow officers to place them in handcuffs. *See McWilliams,* 40 F.4th at 1128-29 ("it was clearly established that a reasonable officer should, at a minimum, have ordered [the plaintiff] to submit to an arrest or use minimal force to grab him while informing him that he was under arrest before using greater force"). Deweese was not told he was under arrest nor grabbed with such minimal force. Reasonable officers must recognize that a threat to use significant force—without informing someone they are under arrest and that they must legally submit—may simply look like a threat without justification.

These precedents, involving more ambiguous or egregious conduct by subjects, are *a fortiori* examples that provided the officers fair notice that Mr. Deweese's harmless, still stance could not justify significant force. *McCowan,* 945 F.3d at 1286. There were no ambiguous movements made by Deweese that would need greater clarification by other precedent to put officers on notice that they should not have deployed a canine against him. The throughline of the applicable precedent is consistent: without objective facts supporting a subject threat or active resistance/flight, intermediate

(canine) force is not justified. *See Luethje*, 131 F.4th at 1199; *Vette*, 989 F.3d at 1170.

The unlawfulness of the officers' conduct was especially clear in light of the legitimate justification rule echoed in *Vette,* 989 F.3d at 1170 (collecting cases), numerous persuasive district court decisions that applied similar precedent as *Luethje* to find analogous canine force excessive, and numerous outside-circuit canine cases that Appellee's fail to meaningfully distinguish. Opening Brief at 40-43, 53-60. The throughline is the same in each: officers need justification via the second two *Graham* factors to justify canine force; without legitimate justification, significant force is not justified.

## III.    **Deadly force: there was no immediate human threat and warnings were feasible.**

The pleaded facts do not show probable cause to believe Mr. Deweese posed an immediate threat of serious physical harm to officers or others at the moment they fired. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Pauly,* 874 F.3d at 1217, 1221 (dispute of fact as to whether gun pointed in officers' direction and presumed to be fired posed an immediate threat to officers). Whether any hostile motions were made with a weapon towards the officers is a significant variable. *Id.* (citing *Est. of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008)). Possession of a weapon does not necessarily mean "*hostile movements* with it." *St. George*, 2021 WL 3700918, at *7.

Here, officers had been warned in advance that Deweese would defend himself against an attacking dog, and Deweese's conduct with a firearm conformed precisely to that warning.

      a. <u>The pleaded facts describe self-defense against a charging dog, not a threat to officers.</u>

While Appellees are correct that ambiguous circumstances involving subjects who appear to draw a firearm toward police permits an inference of danger, this is not such a case. Mr. Deweese remained peaceful for twenty minutes and announced he would shoot the dog *only if* it were sent to attack and he were forced to defend himself. He never threatened humans or indicated he would use force without imminent need. Officers, therefore, knew of his intent to defend himself from the canine when they deployed it. Crucially, Deweese's every action conformed to this self-defense-warning. The Complaint alleges that when the dog was released, Mr. Deweese stepped back, turned away from officers, focused on the dog, and pointed low and away from officers who were not in the same path as the animal. J.A. 26–27 ¶¶ 111–15. A jury could find that reasonable officers would not have perceived an immediate threat to any person. *See Pauly*, 874 F.3d at 1217–22; *Finch v. Rapp*, 38 F.4th 1234, 1241–43 (10th Cir. 2022). Facts before a shooting may show "why a reasonable officer would have perceived otherwise ambiguous

facts as threatening… or instead… innocuous." *Barnes,* 605 U.S. at 6. The factual sequence does so here.

Despite the suggestion officers made a reasonable mistake, "the law is clear" that an officer's belief of a mistaken threat must be reasonable, based on objective information facing them, and not based on faulty assumptions. *Pauly,* 874 F.3d at 1221. Even when officers observe a firearm in a subject's hand, it does not automatically create a reasonable inference that a suspect poses *a threat to officers*. *See id.* at 1209; *St. George*, 2021 WL 3700918 at *7; *see also Cooper v. Sheehan,* 753 F.3d 153, 159 (4th Cir. 2013); *George v. Morris,* 736 F.3d 829, 839 (9th Cir. 2013). From Deweese's preceding warning and his conduct in conformity, a reasonable officer would know his "manifest intentions were to protect himself… not to cause harm." *Rosales*, 72 F.4th at 1153; *St. George*, 2021 WL 3700918 at *7.

> b. *The Larsen sub-factors favor the Estate.*

The *Larsen* sub-factors reinforce that the force was excessive.

First, Officers had time to provide a deadly-force warning but failed. It is reasonable to conclude that officers contemplating a rush toward a subject, after hearing that he would defend himself, knew they risked pushing him to display the firearm for such protection and foreseeably knew they would likely shoot him if he did (as they did). The time available for the officers to

provide a required deadly-force warning was not merely the seconds in between Deweese drawing on the dog and the officers' shooting, it was much earlier, after his warning and before the canine was deployed. There are no Complaint facts indicating Deweese was warned to "surrender" or face death—or that officers would use deadly force if he responded as he told them in advance he would—only demands that he walk out toward the officers or be bit by the canine, followed by the canine attack. J.A. 22-23 at ¶¶ 83, 87. That is not even close to a deadly-force warning.

Second, Deweese made no hostile motions with a weapon *toward the officers*. Deweese was deliberate in ensuring he turned his body away from officers, and they had advance warning to help them anticipate and understand his conduct in drawing on the lunging canine. Police officers are presumed to know the law, including that which permits self-defense. *See* C.R.S. § 18-1-704; C.R.S. § 18-9-202(II)(2.5)(b); *see also Fuller*, 781 P.2d at 650. That should have furthered their recognition of his warning and actions.

Third, police shot from a distance away, even as they ran in after the police dog. They did not fire from up close; they were not in danger in either distance or position at the time they fired. *Compare* photo at J.A. 27 with J.A. 15; see also J.A. 14-15, ¶ 51 (describing the sidewalk to railing as thirty to

fifty feet inward). Deweese was plainly visible, in full view, and did not turn toward or advance on the officers. Police had protection. J.A. 24.

Fourth, Deweese's manifest intentions were broadcast well in advance, by audible communication and then conduct readily observable in conformity with such communication, as described above.

### c. *Efforts to Distinguish Clearly Established Law Fail*

By 2017 and 2019, *Pauly* and *Ceballos* made clear that officers must account for objective facts indicating a suspect's display of a firearm is defensive rather than aggressive. *See Pauly*, 874 F.3d at 1219–22; *Est. of Ceballos*, 919 F.3d at 1216–19.

Attempts to distinguish Appellant's authorities are unpersuasive. It misses that officers must be reasonable with the objective information they have when it clarifies the circumstances of an alleged threat—particularly a mistaken perception of threat. *See Cavanaugh,* 625 F.3d at 666 ("it is not reasonable to ignore facts as they develop which contradict the need for force"). Here, that information removes the normal ambiguity associated with a gun drawn for an unknown purpose, which ambiguity is present in all of the cases upon which Appellees rely. *See, e.g. Palacios v. Fortuna*, 61 F.4th 1248, 1255, 1259-60 (10th Cir. 2023) (ambiguity of subject picking up firearm three times in contradiction of order to drop it favors officers); *Cf.*

*Finch,* 38 F.4th at 1241 (jury could find movements to draw perceived firearm were non-threatening); *See also* Opening Brief at 31, 44.

### IV. Reckless creation: the coordinated escalation unreasonably created the need to use deadly force and was clearly established.

Regardless of whether a jury could find unreasonable conduct solely at the moment police shot, the officers are liable for reckless conduct precipitating the needless escalation to deadly force. The law undisputedly provided fair notice that officers are liable for a shooting, even if otherwise reasonable, if their own reckless conduct "unreasonably created the need to use such force." *Flores*, 101 F.4th at 1194; *see also Pauly*, 874 F.3d at 1217. The sum of this Court's reckless incitement precedent put the officers on notice of a clearly established and/or obvious constitutional violation.[4]

Appellees slice thinly in attempting to distinguish numerous reckless incitement cases by suggesting they do not involve the same facts. But qualified immunity no longer requires a scavenger hunt for mirroring fact patterns. *Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022). Precedent must only involve "materially similar conduct" to provide officers with fair notice. *Luethje*, 131 F.4th at 1198 (citing *Lowe v. Raemisch*, 864 F.3d 1205,

---

[4] Clearly established law is evaluated in light of all relevant precedents known to the court, whether argued or not. *Baca v. Cosper,* 128 F.4th 1319, 1327 n.5 (10th Cir. 2025).

1208 (10th Cir. 2017). Key facts recognized in prior precedent that either analogously demonstrate a constitutional violation or identify violative conduct more egregious, demonstrate "*a fortiori"* that an officer had fair notice his actions would violate a suspect's Fourth Amendment rights. *Est. of Ceballos,* 919 F.3d at 1216; *see also McCowan,* 945 F.3d at 1286. General statements of the law can clearly establish a right if they apply with "obvious clarity" to the specific conduct at issue. *Halley v. Huckaby,* 902 F.3d 1136, 1149 (10th Cir. 2018) (citing *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)).

*Allen* is closely analogous. Officers rapidly approached an armed subject in a manner that predictably elicited a defensive reaction, and this Court held that such conduct could render the ensuing shooting unreasonable. 119 F.3d at 840–41. Directing a sprinting dog to bite in an overwhelming display of force, despite a warning that the subject would defend himself against the dog, is analogous precipitating conduct.[5] *Allen* provided "fair notice" not to recklessly "rush" an armed subject who might

---

[5] While *Allen* involved a vulnerable suicidal suspect, subsequent reckless incitement cases do not include such facts. If this Court requires such similarity, a reasonable inference can be drawn that Deweese was sufficiently vulnerable to be compared, due to age, alcohol-related impairment (see fn. 1, *supra*.), or simple overwhelming fear from guns and threats of canine force.

misunderstand their rush as an attack and respond with fear-driven self-defense.

*Est. of Ceballos* and *Bond v. City of Tahlequah,* 981 F.3d 808, 818 (10th Cir. 2020) also involved aggressive encroachment and escalation that foreseeably prompted a self-defensive response with weapons, just as the canine on Deweese did. Although the Supreme Court overruled *Bond* on second-prong qualified immunity grounds, distinguishing it from *Allen* with three facts—a preceding police conversation, a distanced pursuit into a garage, and no yelling—it tightened the clearly-established inquiry without displacing this Court's first-prong constitutional determination that such facts constituted a reckless-creation violation. *City of Tahlequah v. Bond*, 595 U.S. 9, 12-13 (2021). This Court subsequently discussed the violation in *Bond* to illustrate the contours of the right. *Est. of Taylor,* 16 F.4th at 771-76 (discussing recklessness that heightens the atmosphere of tension and fear and creates a need for greater force). Thus, it continues to provide fair notice to officers.

*Pauly* and *St. George* also provide close precedent involving subjects with firearms who were recklessly incited to self-defensive responses by needless officer escalation, like the officer-directed biting-deployment here. While Appellees criticize that each of those cases involved subjects at home,

the Supreme Court has made clear that the home is not the only place officers should expect firearms for self-defense. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 8, 26, 32–33 (2022); *District of Columbia v. Heller,* 554 U.S. 570, 582-84, 611-14 (2008). Appellees fail to address this or Colorado law that unambiguously permits subjects to use self-defense in public. In fact, *Pauly* specifically counsels officers to anticipate self-defensive reactions in light of the Second Amendment and state law. 874 F.3d at 1219.

*Pauly*, *St. George, and Rosales* also do not involve suicidal or intoxicated subjects, making clear such status is not required for reckless incitement precedent to apply. Reckless precipitating conduct is part of the overall reasonableness analysis. *Rosales,* 72 F.4th at 1154 (citing *Pauly,* 874 F.3d at 1219-20).

The throughline of all of this Court's precedents has been consistent: it is reckless to invoke a "police onslaught at the victim"—aggressive, precipitous action that foreseeably provokes a defensive reaction. *See Arnold*, 35 F.4th at 789; *see also Est. of Taylor*, 16 F.4th at 771–72 (synthesizing cases). All illustrative examples involve circumstances in which "an officer is alleged to have 'aggressively approached [the suspect] or in some way threatened, provoked, or incited [him]....'" *Est. of Thakuri v. City of Westminster*, 19-CV-02412-DDD-KAS, 2024 WL 1152565, at *7 (D. Colo.

Mar. 14, 2024) (synthesizing cases). Unnecessarily "heightening the atmosphere of tension and fear" can predictably escalate an incident to deadly force where it is not required. *Est. of Taylor,* 16 F.4th at 774, 776 (citing and comparing *Bond*, 981 F.3d at 822–24). No predicate clearly-established-violation is required, only objectively reckless conduct that every reasonable officer would know creates an unreasonable risk of harm. *Flores*, 101 F.4th at 1194–96.

Sending a canine to rush and attack Mr. Deweese with "overwhelming force," while possessing advanced knowledge that he would defend himself, and without providing a deadly-force warning, is an *archetypal example* of the recklessly precipitating conduct this Court has long-since warned against. Whether through legal pronouncements, analogous examples, or obviousness, the Appellee-Defendants had ample notice that their reckless conduct would foreseeably lead to his death and violate his rights.

WHEREFORE, this Court should reverse the qualified immunity decision and reinstate all claims.

Dated: November 6, 2025.

Respectfully submitted,

Civil Rights Litigation Group

30

By: /s *Raymond K. Bryant*

Raymond K. Bryant
for Plaintiff-Appellant
Estate of Wilford Deweese

1543 Champa St. Ste. 400
Denver, CO 80202
raymond@rightslitigation.com
(720) 515-6165

## CERTIFICATE OF COMPLIANCE

*Certificate of Compliance With Type-Volume Limit,*
*Typeface Requirements, and Type Style Requirements*

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because it contains 6,456 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (f), as indicated by Microsoft Word's word-count function.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Georgia.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

Dated: November 6, 2025.

By:  *s/ Raymond K. Bryant*
Raymond K. Bryant
for Plaintiff-Appellant
Estate of Wilford Deweese
Civil Rights Litigation Group,
1543 Champa St. Ste. 400
Denver, CO 80202
raymond@rightslitigation.com
(720) 515-6165

## <u>CERTIFICATES OF DIGITAL SUBMISSION</u>

(1) I hereby certify that a copy of the foregoing **APPELLANT'S REPLY BRIEF**, as submitted in Digital Form via the Court's ECF system, is an exact copy of the written document filed with the Clerk.

(2) I further certify that it has been scanned for viruses with the AVG Antivirus software and, according to the program, is free of viruses.

(3) In addition, I certify all required privacy redactions have been made.

Dated: July 30, 2025

By:    */s Raymond Bryant*
Raymond K. Bryant
for Plaintiff-Appellant
Estate of Wilford Deweese
Civil Rights Litigation Group, PLLC
1543 Champa St., Ste. 400
Denver, CO 80202
raymond@rightslitigation.com
(720) 515-6165

33

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing **APPELLANT'S REPLY BRIEF** was furnished through (ECF), and is expected to provide electronic service to the following on this 6th day of November, 2025.

Eric M. Ziporin
Jonathan Eddy
SGR, LLC
3900 E. Mexico Ave., # 700
Denver, Colorado 80210
P: 303-320-0509
Email: eziporin@sgrllc.com
Email: jeddy@sgrllc.com
Attorneys for Defendants Hoover and Schuelke

And

Bryan E. Schmid
Steven W. Martyn
Christopher Strider
El Paso County Attorney's Office
200 S. Cascade Avenue
Colorado Springs, CO 80903
P: (719) 520-6485
F: (719) 520-6487
Email: bryanschmid@elpasoco.com
Email: stevenmartyn@elpasoco.com
Email: chrisstrider@elpasoco.com
Attorneys for Defendants Hancock and Lebaron

By:    */s Raymond Bryant*